Citation Nr: 1550136 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 09-49 798 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to service connection for a left knee condition to include as secondary to a right knee disability.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

A. VanValkenburg, Associate Counsel


INTRODUCTION

The Veteran served on active duty from March 1970 to March 1973.

These matters come before the Board of Veterans' Appeals (Board) on appeal from the June 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

The Veteran testified at a Travel Board hearing in front of the undersigned Veteran's Law Judge (VLJ) in October 2014. A transcript of the hearing is associated with the claims file. 

In February 2015 the Board remanded the claim to the agency of original jurisdiction (AOJ) for further development. The requested development as to the claims adjudicated below has been completed to the extent possible, and no further action is necessary to comply with the Board's remand directives. Stegall v. West, 11 Vet. App. 268 (1998).


FINDING OF FACT

The preponderance of the evidence is against finding that the Veteran has a left knee condition that is etiologically related to a disease, injury, or event which occurred in service, or that was caused by or aggravated by one or more of his service-connected disabilities.


CONCLUSION OF LAW

Service connection for the Veteran's left knee condition is not warranted on a presumptive, direct or secondary basis. 38 U.S.C.A. § 1110, 1111 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

VA's duty to notify and assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. See 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.326. 

When VA receives a complete or substantially complete application for benefits, it is required to notify the Veteran and his or her representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

A letter dated in February 2010, fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). The Veteran was advised that it was ultimately his responsibility to give VA any evidence pertaining to the claims. The letter informed him that additional information or evidence was needed to support his claims, and asked him to send the information or evidence to VA. See Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II). The letter also explained to the Veteran how disability ratings and effective dates are determined. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

VA has met its duty to assist the Veteran in the development of the claim. The Veteran's VA treatment records and examinations been associated with the claims file. 38 U.S.C.A § 5103A, 38 C.F.R. § 3.159. Private treatment records has been associated with the claims file, to the extent possible. The Veteran has not indicated nor does the record show the Veteran is in receipt of Social Security Administration (SSA) disability benefits. The Veteran has at no time otherwise referenced outstanding records that he wanted VA to obtain or that he felt was relevant to the claims.

Additionally, the Veteran has been afforded VA examination most recently in April 2015. The Board has carefully reviewed the VA examination of record and finds that the examination, along with the other evidence of record, is adequate. Thus, with respect to the Veteran's claims, there is no additional evidence which needs to be obtained. 

As noted above, the Veteran also was afforded a hearing before the undersigned Veterans Law Judge (VLJ) during which he presented oral argument in support of his claims. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the VLJ/DRO who chairs a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the VLJ fully explained the issues on appeal during the hearing and specifically discussed the basis of the prior determination, the element(s) of the claims that were lacking to substantiate the claims for benefits, and suggested the submission of evidence that would be beneficial to the Veteran's claims. Significantly, neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of the Board hearing. By contrast, the hearing focused on the elements necessary to substantiate the claims, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claims. As such, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

As the Veteran has not identified any additional evidence pertinent to the claims and as there are no additional records to obtain, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claims is required to comply with the duty to assist.

Service connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Certain chronic diseases, to include arthritis, although not shown in service, may be presumed to have incurred in or aggravated by service if they become manifested to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

To prevail on the issue of service connection, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). 

A disability can be service connected on a secondary basis if it is proximately due to or the result of a service-connected condition. 38 C.F.R. § 3.310(a). Moreover, secondary service connection may be established, as well, by any increase in severity (i.e., aggravation) of a nonservice-connected condition that is proximately due to or the result of a service-connected condition. See 38 C.F.R. § 3.310(b), effective October 10, 2006. See 71 Fed. Reg. 52,744 -52,747 (September 7, 2006); see also Allen v. Brown, 7 Vet. App. 439, 448 (1995). Where a service-connected disability aggravates a nonservice-connected condition, a Veteran may be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. Allen, 7 Vet. App. at 448. 

In short, in order to establish entitlement to service connection on this secondary basis, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) probative evidence establishing a nexus (i.e., link) between the service-connected disability and the current disability. Wallin v. West, 11 Vet. App. 509, 512 (1998).



Left knee condition

The Veteran asserts entitlement to service connection for a left knee condition. 

The Veteran contends his left knee condition is due to in-service duties which required repetitive movements (such as climbing up and down) with heavy equipment and/or after jumping out of a large truck during a rocket attack. See e.g., August 2006 VA examination and Veteran's statement received November 8, 2009. Alternatively, he contends his condition is due to his service-connected right knee condition, as he compensated for his right knee condition by putting more pressure on his left knee. See VA form 9 received December 17, 2009.

The evidence of record demonstrates the Veteran has a current diagnosis of osteoarthritis of the left knee. See April 2015 VA examination. 

As an initial matter, the Board observes that arthritis was not manifested during service or within one year of the Veteran's separation from active duty in 1973 as the first radiological evidence documenting left knee arthritis was in 2010. Accordingly, service connection for arthritis on a presumptive basis is not warranted. See 38 C.F.R. §§ 3.307, 3.309.

Service treatment records (STRs) reflect the Veteran was provided X-rays after jumping out a truck in February 16, 1972, which were negative. As the STRS reflect the existence of an in-service injury and the Veteran is service-connected for a right knee condition, the remaining questions are whether there is a nexus between active duty or a service-connected disability and the left knee disability. 

The STRs are absent complaints, treatment or diagnosis of a left knee condition. The records reflect treatment for a right knee condition but not a left knee condition. X-rays in service were negative, though it remains unclear if the left knee, in addition to the right knee was included in the radiological testing. Significantly, the Veteran's March 1973 exit examination indicated a normal clinical examination for lower extremities and spine, other musculoskeletal. Right, not left, knee pain was noted. As such, the STRs do not support a link between the Veteran's left knee condition and service. 

The Board observes that the Veteran was placed on a physical profile for a knee condition, noted as a "L knee,? torn meniscus" in February 17, 1972 (one day after he had jumped out of a 50 ton truck), however, the record indicates it was actually meant to be a right knee condition, as a right knee medial meniscus injury was documented and no other records contain complaints or treatment of a left knee condition, including any meniscus injury. 

VA treatment records are absent a medical link between the Veteran's left knee condition, service-connected disabilities or active service. 

The Veteran was afforded a VA joints examination in August 2006. The Veteran reported knee pain onset after jumping out of a truck during a rocket attack in 1971. The Veteran explained he did not seek treatment for his left knee because his right knee was injured more. He has had progressive symptoms since the injury. The VA examiner provided a negative nexus opinion. The VA examiner opined that upon a review of medical records he could not find evidence that a left knee injury occurred and it was not mentioned in his exit examination. An X-ray was conducted and found normal bilateral knees. 

The Veteran was afforded a knee joints contract examination in December 2008 to address the Veteran's right knee condition. X-rays at this time found mild-to-moderate degenerative changes at the right knee, but it appears the left knee was not included in the radiology study. 

The Veteran was afforded a VA general medical examination in March 2010. The Veteran reported a history of chronic left knee pain which onset one year prior. He detailed left knee pain was gradual in its onset and had been progressive over the years. The Veteran was diagnosed with degenerative joint disease of the left knee. 

The Veteran was afforded a VA joints examination in May 2010. The VA examiner provided a negative nexus opinion between the Veterans' left knee condition and his service-connected right knee condition. The Veteran had a well-documented history of chronic right knee pain starting in 1971 following an injury. In February 1972 he was diagnosed with a meniscus tear and underwent arthroscopic evaluation and debridement of the meniscus. There was a well-documented history of continued pain in the right knee. The Veteran gave a history of left knee pain which onset approximately one year prior and stated the left knee condition began as a result of his right knee condition due to favoring his right knee. An X-ray of the knees in January 2010 revealed degenerative joint disease in both knees. Given the Veteran's history, the documented history and results of previous X-ray evaluations, and results of the examination, the right and left knee conditions were separate and distinct entities. There was no evidence of a significant gait disturbance which would account for the left knee condition. The examination and the studies conducted did not indicate any connection between the right and left knee condition. 

A January 2011 general VA examination noted that X-rays of the left knee showed moderate tricompartmental osteoarthritic changes. The Veteran reported mild left knee pain, two days per week. 

The Veteran essentially testified at an October 2014 Board hearing that VA doctors told him his left knee condition was attributable to his right knee condition. He explained essentially that his altered gait caused more pressure on his left knee which caused it to go bad. 

The Board found the VA examiner opinions above did not contain sufficient information to adjudicate the claim. In a February 2015 Remand, a new VA examination and opinion was requested to address the etiology of the condition on a direct and secondary basis. 
 
The Veteran was afforded a VA knee examination in April 2015. The Veteran was diagnosed with chronic left knee osteoarthritis. The Veteran reported a history of left knee pain which onset about four to five years prior, which he attributed to favoring the right knee. The VA examiner provided negative nexus opinion between the Veterans' left knee condition and military service. He stated that there was no evidence found for evaluation and treatment for the left knee joint during military service. Enlistment and separation physical examinations did not give a history of left knee symptoms or problems, and clinical examination findings were reported as normal. Right knee osteoarthritis was initially diagnosed radiographically in 2008, with previous X-ray findings normal in 2006, many years after completion of military service in 1973. It was more likely that the left knee osteoarthritis is the result of natural process of joint aging and wear and tear over the years, after completion of military service.

The 2015 VA examiner provided a negative nexus opinion between the Veterans' left knee condition and his service-connected right knee condition. It was noted the Veteran attributed his left knee condition to his right knee condition due to favoring the right knee. A review of medical literature and scientific studies did not support the opinion of a contralateral joint causing osteoarthritis of a correlating joint, such as the right knee causing osteoarthritis in the left knee. Mechanical stresses affect weight bearing joints independently. Again, it was more likely that the left knee osteoarthritis is the result of natural process of joint aging and wear and tear over the years, after completion of military service. The VA examiner cited to medical literature regarding osteoarthritis which identified risk factors and causes of the condition. It was noted the Veteran had several risk factors: obesity, age, occupation after military service in remodeling and construction work, and, more recently, muscle weakness with incoordination attributable to his diabetic peripheral neuropathy.

The VA examiner provided a negative nexus opinion between the Veterans' left knee condition and his other service-connected disabilities of diabetic neuropathy, diabetes with other complications, and a cardiac condition. According to Veteran's symptoms, the osteoarthritic changes in the left knee preceded the progressive weakness, incoordination, and numbness in bilateral lower extremities from the diabetic neuropathy. Evidence did not indicate aggravation beyond the natural course of osteoarthritis of the knee due to the diabetic neuropathy or diabetes with other complications. According to medical history, the left knee osteoarthritis preceded the onset of this Veteran's cardiac condition. There is no known nexus established between development or aggravation of osteoarthritis of a joint specifically due to cardiac disease. 

The Board finds that the preponderance of the evidence is against a finding that the Veteran's left knee condition onset in service or are otherwise related to his period of service and/or secondary to service connected disabilities. 

As discussed above, STRs do not support a link between service and a left knee condition. The Board finds the 2015 VA examination report which provided negative opinion a direct and secondary basis to be highly probative, as it was based on a thorough review of the Veterans medical records, evaluation of the Veteran, and cites to relevant medical principles. Further, negative nexus opinions were also provided by a VA examiner in August 2006 on a direct basis and in May 2010 on a secondary basis. 

The Board has considered the lay statements of the Veteran asserting his service-connected right knee condition or active duty service caused his left knee condition. The Board notes that although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issues in this case, a relationship between a left knee condition and a right knee condition and/or an in-service injury is outside the realm of common knowledge of a lay person. See Jandreau, 492 F.3d at 1733 n. 4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer).

To the extent the Veteran reports continuity of post-service arthritis, the Board finds his allegations of limited probative value. The Board does not find it reasonable that the Veteran would be experiencing left knee problems since service and not mention such problems during medical treatments in service or post-service when he received treatments for other medical conditions. See Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (noting that the absence of contemporaneous medical documentation may go to the credibility and weight of Veteran's lay testimony, but the lack of such evidence does not, in and of itself, render the lay testimony incredible). In addition, the Veteran reported during his 2006 VA examination that knee pain had onset approximately one year prior, which was over three decades post-service. Objective medical evidence does not support a finding of continuity, as the service separation report was negative for any documented left knee condition/arthritis and X-rays from 2006 were negative. In light of the above, the Board finds that service connection based on continuity of symptomatology is not warranted.

Because the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine does not apply, and service connection for a left knee condition is not warranted on a direct or secondary basis. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001).


ORDER

Entitlement to service connection for a left knee condition is denied.



____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs