﻿Citation Nr: 18104732
Decision Date: 05/23/18 Archive Date: 05/22/18

DOCKET NO. 14-25 346
DATE: May 23, 2018
ORDER
Entitlement to service connection for claimed stroke residuals is dismissed.
Entitlement to service connection for a chronic disability manifested by headaches is denied.
Entitlement to service connection for an optic disability is denied.
FINDINGS OF FACT
1. On the record of the Board hearing, the Veteran withdrew his appeal to the extent of entitlement to service connection for claimed stroke residuals.
2. A chronic disability manifested by headaches is not related to service.
3. An optic disability is not related to service.
CONCLUSIONS OF LAW
1. The criteria for withdrawal of an appeal by the appellant have been satisfied to the extent of entitlement to service connection for claimed stroke residuals. 38 U.S.C. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2017).
2. The criteria for service connection for a disability manifested by headaches have not been satisfied. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310, 3.317 (2017).
3. The criteria for service connection for an optic disability have not been satisfied. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310, 3.317 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The appellant is a veteran (the Veteran) who had active duty service from October 1987 to October 1993.
In September 2017, the Veteran presented testimony at a Board hearing, chaired via videoconference by the undersigned Veterans Law Judge, and accepted such hearing in lieu of an in-person hearing before a Member of the Board. See 38 C.F.R. § 20.700(e) (2017). The Veteran was informed of the basis for the RO’s denial of his claims and he was informed of the information and evidence necessary to substantiate each claim. He was granted an additional 60 days to submit evidence following the hearing. A transcript of the hearing is associated with the claims file. 38 C.F.R. § 3.103 (2017).
The Veteran also initiated an appeal of the denial of service connection for a tumor/cyst of the head. That issue was listed on the June 2014 Statement of the Case. However, on the VA Form 9, the Veteran checked the box indicating he had read the Statement of the Case and only wished to perfect the appeal as to certain issues. Those did not include the denial of service connection for a tumor/cyst. 
Withdrawal of Appeal
An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204. 
In the present case, the Veteran withdrew his appeal on the record of the Board hearing to the extent of the issue of entitlement to service connection for claimed stroke residuals. Hence, there remain no allegations of errors of fact or law for appellate consideration with respect to that issue. Accordingly, the Board does not have jurisdiction to review the appeal of that issue.
The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C. § 7105. As the appeal has been withdrawn, the Board finds that dismissal is appropriate.
Service Connection
VA law provides that, for disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, or other than a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation, except if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs. 38 U.S.C. §§ 1110, 1131 (West 2014). 
Entitlement to service connection on a direct basis requires (1) evidence of current nonservice-connected disability; (2) evidence of in-service incurrence or aggravation of disease or injury; and (3) evidence of a nexus between the in-service disease or injury and the current nonservice-connected disability. 38 C.F.R. § 3.303(a); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 
Service connection on a secondary basis requires (1) evidence of a current nonservice-connected disability; (2) evidence of a service-connected disability; and (3) evidence establishing that the service-connected disability caused or aggravated the current nonservice-connected disability. 38 C.F.R. § 3.310(a), (b); Wallin v. West, 11 Vet. App. 509, 512 (1998). 
For specific enumerated diseases designated as “chronic” there is a presumption that such chronic disease was incurred in or aggravated by service even though there is no evidence of such chronic disease during the period of service. In order for the presumption to attach, the disease must have become manifest to a degree of 10 percent or more within one year of separation from active duty. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). 
Presumptive service connection for the specified chronic diseases may alternatively be established by way of continuity of symptomatology under 38 C.F.R. § 3.303(b). However, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic in 38 C.F.R. § 3.309(a) Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 
Headaches and optic neuropathy are not included among the presumptive chronic diseases. 
The Veteran in this case served in the Persian Gulf during the Gulf War. Under 38 U.S.C. § 1117(a)(1), compensation is warranted for a Persian Gulf veteran who exhibits objective indications of a “qualifying chronic disability” that became manifest during service on active duty in the Armed Forces in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent during the presumptive period prescribed by the Secretary. To constitute a “qualifying” chronic disability, the chronic disability must not be attributed to any known clinical disease by history, physical examination, or laboratory tests. See 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a)(1). 
The term “objective indications of chronic disability” includes both “signs,” in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. See 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a)(3).
Signs or symptoms which may be manifestations of undiagnosed illness or medically unexplained chronic multisymptom illness include, but are not limited to: fatigue, signs or symptoms involving skin, headache, muscle pain, joint pain, neurologic signs and symptoms, neuropsychological signs or symptoms, signs or symptoms involving the respiratory system (upper or lower), sleep disturbances, gastrointestinal signs or symptoms, cardiovascular signs or symptoms, abnormal weight loss, menstrual disorders. See 38 U.S.C. § 1117; 38 C.F.R. § 3.317(b). 
A qualifying chronic disability means a chronic disability resulting from any of the following (or any combination of the following): undiagnosed illness; the following medically unexplained chronic multisymptom illnesses that are defined by a cluster of signs or symptoms: chronic fatigue syndrome; fibromyalgia; functional gastrointestinal disorders (excluding structural gastrointestinal diseases). See 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a)(2)(i).
The term medically unexplained chronic multisymptom illness means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multisymptom illnesses of partially understood etiology and pathophysiology will not be considered medically unexplained. See 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a)(2)(ii).
Disabilities that have existed for 6 months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a 6-month period will be considered chronic. The 6-month period of chronicity will be measured from the earliest date on which the pertinent evidence establishes that the signs or symptoms of the disability first became manifest. A chronic disability resulting from an undiagnosed illness shall be rated using evaluation criteria from part 4 of this chapter for a disease or injury in which the functions affected, anatomical localization, or symptomatology are similar. A disability shall be considered service connected for purposes of all laws of the United States. 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a)(4). 
The applicable presumptive period specified in 38 C.F.R. § 3.317(a)(1)(i) has been extended several times and it currently ends December 31, 2021. 
Compensation shall not be paid if there is affirmative evidence that an undiagnosed illness was not incurred during active military, naval, or air service in the Southwest Asia theater of operations during the Persian Gulf War; or if there is affirmative evidence that an undiagnosed illness was caused by a supervening condition or event that occurred between the veteran's most recent departure from active duty in the Southwest Asia theater of operations during the Persian Gulf War and the onset of the illness; or if there is affirmative evidence that the illness is the result of the veteran's own willful misconduct or the abuse of alcohol or drugs. See 38 U.S.C. § 1117; 38 C.F.R. § 3.317(c).
After the evidence has been assembled, it is the Board's responsibility to evaluate the entire record. 38 U.S.C. § 7104(a) (West 2014). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2017). 
A VA claimant need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the preponderance of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).
Service treatment records include an April 14, 1988, Eye Consult, which reveals the Veteran’s account that he was hit in the left eye with a baseball, 7 years prior (Record 05/06/2015 at 90). Nevertheless, the Veteran’s eyes and visual acuity were normal at examination, acceptance, and enrollment into service in February 1987. (Record 05/06/2015 at 99).
A May 24, 1988, Clinical Note reveals that visual acuity was within normal limits in each eye. A June 15, 1988, Clinical Note reveals that a color test was requested due to previous failure. An August 31, 1988, Physical Profile noted that the Veteran could not pass the color vision test (Record 05/06/2015 at 50). An October 3, 1988, Clinical Note reveals the Veteran failed a color vision test and that a Farnsworth-Munsell test was needed (Record 05/06/2015 at 92, 95-97).
A May 11, 1990, Eye Consult reveals the Veteran’s complaint of headaches while driving. A medical history section noted that he was hit with a baseball in the left eye (Record 05/06/2015 at 44).
A September 3, 1990, Clinical Note reveals complaint of headaches and sore throat, as well as ear pain for 3 weeks. The assessment was sinusitis with ear infection (Record 05/06/2015 at 21). 
A report of medical history completed by the Veteran on August 16, 1993 (service separation), reveals the Veteran’s account that he had no history of, or current, frequent or severe headaches, or eye trouble. The physician’s summary portion of the examination made no reference to headaches or eye trouble (Record 05/06/2015 at 105).
The Veteran was discharged from the service on October 14, 1993. After service, there is no report of headaches or eye problems for many years. 
An April 2, 2007, Clinical Note by G. Van Stavern, MD, reveals the Veteran’s report of a history of vision loss in 2005. He stated that, 3 weeks ago, he had a headache without central visual loss, lasting for 2 days. It then cleared up, but 4 days later, he awoke with central visual loss in the left eye. He stated the central blurriness was always there. He could see shades through the scotoma. He had a clear field of vision, temporally, in the left eye. He had no symptoms in the right eye and no accompanying headaches, weakness, or numbness of any body parts. MRI was normal (Record 04/07/2010 at 21). 
An April 9, 2007, Clinical Note by Dr. Van Stavern reveals that the Veteran’s history and examination were compatible with near-simultaneous ischemic optic neuropathy. Since the prior visit, the Veteran noted that his left vision may have cleared up somewhat and he still denied issues with the right eye. Visual testing showed 20/20 vision in the right eye and 20/200 in the left eye (Record 04/07/2010 at 19).
A May 23, 2007, follow-up noted mild improvement (Record 04/07/2010 at 14). An August 21, 2007, follow-up noted that testing was positive for stick platelet syndrome (Record 04/07/2010 at 11). A February 19, 2008, follow-up noted some improvement in the left eye (Record 04/07/2010 at 6).
An October 2009 letter from a friend notes that she has known the Veteran since August 2001 and that he has had migraines and vision loss since he has known him, and that he had a stroke in 2007 (Record 11/16/2009). 
A January 26, 2010, VA Primary Care Note reveals complaint of headaches approximately 3 or 4 times per week (Record 06/04/2010 at 20).
A March 30, 2010, Psychology Consult notes the Veteran’s account that he began having headaches in 1993. The Veteran reported that he had a cerebral vascular accident in January 2007. Two months later, he awoke to lost vision in his left eye from another cerebral vascular accident. He reported cognitive impairment as well. He wondered if his symptoms were a result of “Gulf War Syndrome.” The examiner opined that Gulf War illness was unlikely as his cognitive symptoms did not appear until 11 years after his service and had an apparent waxing and waning course (Record 06/09/2010).
The report of a June 2010 VA Gulf War Guidelines Examination reveals the Veteran’s complaint of headaches beginning in 1992. They became more frequent over the years, and he was subsequently diagnosed with possible migraines. The Veteran also reported visual loss in the left eye. The examiner noted that there has been no diagnosed cerebral vascular accident. While the Veteran may have had a TIA, he could not say this without resort to speculation. According to the examiner, the Veteran had sticky platelet syndrome, which is genetic, and a risk factor for this. The examiner opined that neither condition was related to service. The rationale for the optic condition was that this occurred 16 years after leaving the service. According to the opinion, any exposure in the Gulf War would not lead to such a condition so many years after leaving the environment; and, burning oil cannot cause an ischemic event such as sticky platelet syndrome. Regarding the diagnosis of migraine headaches, the examiner noted that there is no evidence this began in service. Moreover, exposures such as burning oil can cause headaches at the time of exposure, but the headaches should then resolve when exposure ceases (Record 06/28/2010).
On the July 2011 VA Form 9, the Veteran stated that he did not have the conditions claimed until after active duty, and that he needed to supply additional medical information and be tested for presumptive Desert Storm conditions (Record 07/26/2011). 
At the Board hearing, the Veteran testified that he was directly exposed to jet fuel, which got in his eyes, and that his eye condition started in 1994-96. He testified that he sought treatment for headaches in 1995 to 1996. He also asserted that his headaches may be due to his tinnitus. 
After a review of all of the evidence, the Board finds that the Veteran’s current optic disability and headaches are not related to service and are not proximately due to, a result of, or aggravated by a service-connected disability. 
The current diagnosis regarding the eyes is optic neuropathy. The current diagnosis regarding the headaches is migraine headaches. There is no medical opinion that purports to relate either disability to service, to include the special circumstances surrounding his Gulf War service. The Board notes that both conditions have been related to known clinical diagnosis. Therefore, the provisions pertaining to undiagnosed illness and medically unexplained chronic multisymptom illness do not apply. 
The Veteran has primarily asserted that both conditions began after service. However, he reported to a medical treatment provider in June 2010 that his headaches began in 1992. He was discharged in October 1993. While the Board acknowledges that the Veteran complained of headaches on occasion in the service, this is not probative of the existence of a chronic disability at that time. The Board finds that any assertion as to direct service onset for a chronic disability manifested by headaches is in conflict with the contemporaneous evidence. Notably, the Veteran denied a history of, or current, frequent or severe headaches at the time of service separation. 
The Board also acknowledges that the Veteran failed a color identification test in the service. While he passed a color vision test (PIP) at service entry, color blindness does not appear to be a compensable disability under VA law. Disability of the eyes and vision is evaluated on the basis of visual acuity, field vision, and muscle function. 38 C.F.R. §§ 4.75-4.79. There is no diagnostic code addressing loss of color vision. Moreover, there is no post-service diagnosis of loss of color vision. It is therefore not shown to be a current disability. In addition, there is no medical opinion that purports to relate the Veteran’s current optic neuropathy to his failed color vision test in service. To the extent he now contends he had symptoms of optic neuropathy in service, this is in conflict with his report that he had no history of, or current, eye trouble, at the time of service separation. 
To the extent the Veteran now contends he had chronic headaches in service, or optic neuropathy in service, the Board finds his statements at service separation to be more credible and persuasive than the contradictory statements made in support of a claim for disability benefits. The statements at service separation are contemporaneous with service and are more reliable than statements made years later in the context of a claim for benefits. See Seng v. Holder, 584 F.3d 13, 19 (1st Cir. 2009) (noting that, notwithstanding the declarant’s intent to speak the truth, statement may lack credibility because of faulty memory); and see Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (interest may affect the credibility of testimony).
The Board has considered the Veteran’s assertion that both conditions are related to Gulf War Syndrome, or exposure to various environmental toxins in the Persian Gulf, or that headaches are related to service-connected tinnitus. 
Generally, lay evidence is competent with regard to identification of a disease with unique and readily identifiable features which are capable of lay observation. See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007). A lay person may speak to etiology in some limited circumstances in which nexus is obvious merely through observation, such as sustaining a fall leading to a broken leg. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Lay persons may also provide competent evidence regarding a contemporaneous medical diagnosis or a description of symptoms in service which supports a later diagnosis by a medical professional. However, a lay person is not competent to provide evidence as to more complex medical questions, i.e., those which are not capable of lay observation. 
Lay statements are not competent evidence regarding diagnosis or etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever); Jandreau, at 1377, n. 4 (‘sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer’); 38 C.F.R. § 3.159(a)(2). 
The Board finds that relating a current diagnosis of chronic neurological diseases of the head and eyes to exposure to environmental toxins in service, or relating headaches to tinnitus, is not the equivalent of relating a broken bone to a concurrent injury to the same body part (Jandreau, at 1377). Such an opinion requires specialized training and knowledge, and is not capable of lay observation. Accordingly, the Veteran’s lay statements are not competent evidence of an etiologic relationship between either claimed disability and environmental toxin exposure in service; or a service-connected disability.
In sum, the Board finds that a current disability manifested by headaches, and a current optic disability, are not related to service. The Board also finds that neither claimed disability is related to a service-connected disability. In light of these findings, the Board concludes that service connection for the claimed headaches and optic disability is not warranted. 
In reaching these conclusions, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.
 
JONATHAN B. KRAMER
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD L. Cramp, Counsel