﻿Citation Nr: AXXXXXXXX
Decision Date: 05/02/19 Archive Date: 05/02/19

DOCKET NO. 181218-1440
DATE: May 2, 2019

ORDER

Entitlement to a rating of 70 percent, but no higher, for posttraumatic stress disorder (PTSD) is granted from December 25, 2009 to July 24, 2018.

Entitlement to a total disability rating based on individual unemployability (TDIU) is granted from December 25, 2009 to April 16, 2014. 

Readjudication of the claim of entitlement to service connection for a neck disability is warranted.

Entitlement to service connection for a respiratory disorder is denied.

Entitlement to service connection for a neck disability is denied.

Entitlement to service connection for a shoulder disability is denied.

REMANDED

Entitlement to recognition of S.D. as the helpless child of the Veteran on the basis of permanent incapacity for self-support prior to age 18 is remanded.

FINDINGS OF FACT

1. The Veteran’s PTSD has been manifested by occupational and social impairment with deficiencies in most areas from December 25, 2009 to July 24, 2018.

2. The Veteran’s PTSD, diabetes, cataracts, and bilateral upper and lower extremity peripheral neuropathy rendered him unable to secure or follow a substantially gainful occupation prior to April 16, 2014.

3. New evidence was received after the December 2007 denial that is relevant to the issue of entitlement to service connection for a neck disability. 

4. The Veteran’s respiratory disorder was not incurred during active duty and is not otherwise related to military service.

5. The Veteran’s neck disability was not incurred during active duty, did not manifest to a compensable degree within one year of separation, and is not otherwise related to military service.

6. The Veteran’s shoulder disability was not incurred during active duty, did not manifest to a compensable degree within one year of separation, and is not otherwise related to military service, nor is it proximately due to, or aggravated by, a service-connected disability.

CONCLUSIONS OF LAW

1. The criteria for a rating of 70 percent for PTSD, but no higher, are met from December 25, 2009 to July 24, 2018. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411.

2. The criteria for entitlement to a TDIU are met from December 25, 2009 to April 16, 2014. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.3, 4.15, 4.16.

3. The criteria for readjudicating the claim of entitlement to service connection for a neck disability are met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2017).

4. The criteria for entitlement to service connection for a respiratory disorder are not met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

5. The criteria for entitlement to service connection for a neck disability are not met. 38 U.S.C. §§ 1110, 1112, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

6. The criteria for entitlement to service connection for a shoulder disability are not met. 38 U.S.C. §§ 1110, 1112, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty in the United States Army from March 1966 to March 1969, including service in the Republic of Vietnam. He selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the November 2018 RAMP rating decision considered the evidence of record as of July 24, 2018, the date that VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the AOJ.

The new and material evidence issue regarding a neck disability has been recharacterized to reflect the new evidentiary standard under the AMA. Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109.

1. Entitlement to a rating of 70 percent, but no higher, for PTSD is granted from December 25, 2009 to July 24, 2018.

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentage ratings represent, as far as can practicably be determined, the average impairment in earning capacity in civil occupations. 38 U.S.C. § 1155. The disability must be viewed in relation to its history. 38 C.F.R. § 4.1. If two disability ratings are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

The Veteran’s PTSD is currently rated at 30 percent disabling pursuant to 38 C.F.R. § 4.130, DC 9411, which is rated under the General Rating Formula for Mental Disorders. A 70 percent rating is assigned when there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

A 100 percent rating is warranted if there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

When determining the appropriate disability evaluation to assign, the Board’s primary consideration is a veteran’s symptoms, but it must also make findings as to how those symptoms impact a veteran’s occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002).

By way of background, a May 2007 rating decision awarded service connection for PTSD and assigned a 30 percent rating, effective August 13, 2002. The current appeal period before the Board begins on June 2, 2010, the date VA received the Veteran’s increased rating claim, plus the one-year “look back” period. Gaston v. Shinseki, 605 F.3d 979, 982 (Fed. Cir. 2010).

Initially, the Board notes that the Veteran is also diagnosed with nonservice-connected depression. The evidence of record does not sufficiently distinguish the symptoms of this disorder from his service-connected PTSD. Thus, the Board’s instant discussion attributes all of the Veteran’s mental health symptoms to his PTSD. Mittleider v. West, 11 Vet. App. 181, 182 (1998). While the January 2013 VA examination report shows a diagnosis of dementia disorder, the preponderance of the competent and credible evidence of record does not establish that the Veteran is diagnosed with dementia. 

Upon review of the totality of the record, the Board finds that a higher rating of 70 percent is warranted for the Veteran’s PTSD, effective December 25, 2009, the date the Veteran first reported having suicidal ideation within the “look back” period. See August 2010 VA examination report (noting suicidal ideation around Christmas 2009); November 2010 letter from S.W.B., Ph.D. (noting periodic suicidal isolation); January 2013 VA examination report. This rating is based on symptoms such as depressed mood, anxiety, suspiciousness, chronic sleep impairment, irritability, isolative behaviors, hypervigilance, suicidal ideation, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances (including work or a work-like setting), as well as impaired judgment and insight. See Bankhead v. Shulkin, 29 Vet. App. 10 (2017) (“the presence of suicidal ideation alone, that is, a veteran’s thoughts of his or her own death or thoughts of engaging in suicide-related behavior, may cause occupational and social impairment with deficiencies in most areas.”); January 2013 VA examination report; VA treatment records dated in 2012 (consistently noting impairment in judgment and insight); November 2017 VA examination report (noting “mild to moderately severe PTSD and depression symptoms” and preference for withdrawal and isolation). Such symptoms support an award of a 70 percent rating since December 25, 2009. Although VA examiners found that the Veteran’s social and occupational functioning was mildly impaired, this finding is in conflict with other, more severe symptoms such as suicidal ideation and difficulty in adapting to stressful circumstances noted in the November 2010 letter from his VA psychologist and in the July 2010 and January 2013 VA examination reports, and the Board affords the Veteran the benefit of the doubt in this regard. Notably, the January 2013 VA examiner found that the Veteran evidenced serious impairment in social or occupational functioning, consistent with a 70 percent rating.

A higher, 100 percent rating is not warranted at any point during the appeal period because the Veteran has never demonstrated total occupational and social impairment or symptoms of similar severity, frequency, or duration as to those contemplated by the 100 percent criteria. There have been no deficiencies identified in the Veteran’s thought processes or communication, nor has there been any indication of disorientation, delusions, or grossly inappropriate behavior, and the Veteran has never reported memory loss of the severity contemplated by a 100 percent rating. Although the Veteran endorsed hallucinations, he described them as flashbacks, and in any event they are not persistent. Suicidal ideation was endorsed, but the Veteran has consistently denied any intent or attempts of hurting himself; thus, the evidence does not demonstrate a persistent danger of the Veteran hurting himself. There are no other symptoms throughout the appeal period reflective of total social impairment. Therefore, a rating higher than 70 percent is not warranted.

2. Entitlement to a TDIU is granted from December 25, 2009 to April 16, 2014. 

A total disability rating may be assigned, where the schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16. Consideration may be given to a veteran’s level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or the impairment caused by any nonservice-connected disabilities. See 38 C.F.R. §§ 4.16, 4.19. The fact that a veteran may be unemployed or has difficulty obtaining employment is not determinative. The ultimate question is whether the veteran, because of service-connected disabilities, is incapable of performing the physical and mental acts required by employment, not whether he or she can find employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). 

Here, The Veteran seeks an earlier effective date for entitlement to TDIU. He is in receipt of TDIU from April 16, 2014. Prior to that date, service connection was in effect for cataracts, PTSD, diabetes, bilateral upper extremity peripheral neuropathy, and bilateral lower extremity peripheral neuropathy. As indicated above, the Board has granted a 70 percent rating for PTSD, effective December 25, 2009, and the Veteran now meets the criteria for consideration of TDIU on a schedular basis as of that date. Accordingly, what remains to be determined is whether the functional impairment associated with his disabilities is of such nature and severity as to preclude substantially gainful employment.

The Veteran worked as an aircraft mechanic from May 1998 to July 11, 2006 and has been unemployed since July 12, 2006. See November 2006 VA Form 21-4192. He was no longer employed due to his neck surgery. Id. He reports completing high school and attending one year of trade school. See October 2013 VA Form 21-8940.

In May 2009, a VA examiner determined that diabetes had a moderate effect on the Veteran’s usual occupation and daily activities. As for cataracts, the examiner noted that it caused poor reading vision and that the Veteran often used a magnifier. 

In his November 2010 letter, VA psychologist S.W.B. noted that the Veteran evidenced a “marked change in functioning . . . [that has] culminated in severe disruption in his . . . occupational functioning” due to his PTSD.

At the August 2012 VA examination, the Veteran reported that he could no longer work due to weakness in his arms and legs, as well as numbness in hands and feet. He also indicated difficulty performing fine manipulative tasks and stated that he could not walk or be on his feet for very long. The examiner determined that the severity of his upper and lower bilateral extremity peripheral polyneuropathy was moderate. The examiner also indicated that the Veteran cataracts impacted his ability to work, finding that his decreased acuity limited all activities in bright direct lighting, as it caused glare and photophobia, and at night, especially while driving. 

As for PTSD, the July 2010 and January 2013 VA examiners noted that the Veteran had chronic sleep impairment, difficulty adapting to stressful circumstances, including work or a worklike setting, and difficulty establishing and maintain effective work and social relationships. 

The Board emphasizes that the determination of whether a veteran is unable to secure of follow a substantially gainful occupation due to service-connected disabilities is a factual rather than a medical question. Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013). Given the VA examiners’ findings, coupled with the Veteran’s competent and credible reports, as well as his level of education and occupational background, the Board finds that he is unable to secure or maintain a substantially gainful occupation due to his service-connected PTSD, diabetes, cataracts, and bilateral upper and lower extremity peripheral neuropathy. Accordingly, a TDIU is established from December 25, 2009. 

3. Whether new and relevant evidence was presented to warrant readjudicating the January 2003 claim of entitlement to service connection for a neck disability. 

The Veteran asserts that he submitted evidence with his legacy system petition to reopen a claim for service connection for a neck disability that is new and relevant and warrants readjudication of the issue. VA will readjudicate a claim if new and relevant evidenced is presented or secured. AMA, Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. AMA, Pub. L. No. 115-55, § 101(35), 131 Stat. 1105, 1105.

The questions in this case are whether the Veteran submitted evidence after the prior final denial of his claim for service connection for a neck disability in the legacy system, and if so, whether that evidence is new and relevant to his claim.

The Board finds the Veteran submitted new evidence after the prior final rating decision in the legacy system that is relevant to his claim. The Veteran presented testimony at his May 2017 Board Hearing and a VA medical nexus opinion was obtained in November 2017, after the December 2007 prior final legacy rating decision. This evidence was not already of record and may prove or disprove the nexus element of the claim for service connection for a neck disability. Readjudication of the claim is warranted.

4. Entitlement to service connection for a respiratory disorder is denied.

5. Entitlement to service connection for a neck disability is denied.

6. Entitlement to service connection for a shoulder disability is denied.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

Certain chronic disabilities, including arthritis, may be presumed to have been incurred in service when manifest to a compensable degree within one year of discharge from active duty. 38 U.S.C. § 1112; 38 C.F.R. §§ 3.307, 3.309. The option of establishing service connection through a demonstration of continuity of symptomatology is specifically limited to the chronic disabilities listed in 38 C.F.R. § 3.309(a). See 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Service connection may be established on a secondary basis for a disability proximately due to or aggravated by a service-connected disease or injury. See 38 C.F.R. § 3.310; see also Allen v. Brown, 7 Vet. App. 439 (1995) (en banc). To establish secondary service connection, a Veteran must show: (1) the existence of a present disability; (2) the existence of a service-connected disability; and (3) a causal relationship between the present disability and the service-connected disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

The presence of current respiratory, neck, and shoulder disabilities is not in dispute, as the Veteran has been diagnosed with chronic obstructive pulmonary disease (COPD), asthmatic bronchitis, degenerative disease of the cervical spine with cervical myelopathy, and bilateral shoulder degenerative arthritis. See November 2017 VA examination reports. Accordingly, the first element of service connection is met. 

Regarding the second element, in-service incurrence of a disease or injury, the Veteran’s service treatment records (STRs) reflect that he was diagnosed with an upper respiratory infection in October 1968. While his STRs are negative for findings or symptoms of neck and shoulder disabilities, the Veteran competently and credibly testified as to in-service neck and shoulder injuries from heavy lifting and having to take cover. Affording him the benefit of the doubt, element two is also established.

Regarding the last element, nexus, the only competent opinions of record are against the claims. Specifically, November 2017 VA examiners opined that it was less likely than not that the Veteran’s respiratory, neck, and shoulder disabilities were caused by or related to service. 

As for the Veteran’s respiratory disorders, the examiner reasoned that the Veteran’s STRs were negative for a chronic respiratory condition during active duty. Moreover, and critically, the examiner highlighted the fact that the Veteran reported to her that he did not have any respiratory problems during service and endorsed a history of smoking from 1966 to 1999. The examiner attributed the Veteran’s respiratory conditions to his 30 pack per year smoking history, explaining that smoking is a known major risk factor for the development of COPD and bronchitis.

Regarding the Veteran’s neck and shoulder disabilities, the examiner, who acknowledged consideration of the Veteran’s reports of heavy lifting and having to take cover, emphasized that his current disabilities were not due to any specific injury or incident in service. In support of his opinion, the examiner noted that the Veteran’s medical history, including the lack of ongoing evaluation and treatment, was not consistent with chronic neck or shoulder problems, as the Veteran first reported having shoulder pain in 2005 and neck pain in 2006, decades after service. He also pointed out that the Veteran’s STRs were completely silent for any complaints, diagnosis, or treatment related to the neck or shoulders. The examiner found no evidence to support the contention that having to take cover had a direct causative effect to the development of a neck or shoulder condition, and determined that the Veteran’s neck and shoulder disabilities were unrelated to distant military occupational tasks, such as lifting equipment and artillery ammunition and working as a bulldozer operator while in service and attributed the disabilities to the aging process and his civilian occupation as an aircraft mechanic.

The Board affords these medical opinions great probative value, as the examiners considered the Veteran’s entire relevant medical history and provided thorough rationales with supporting data as well as reasoned medical explanations. 

There is no competent opinion to the contrary. To the extent that the Veteran and his wife assert that his respiratory, neck, and shoulder disabilities are the result of his active duty service, the Board finds that they are not competent to do so, as the determination as to the etiology of such disabilities are complex medical questions that are beyond the ken of a layperson. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

Additionally, there is no evidence that the Veteran’s degenerative disease and arthritis manifested to a compensable degree within a year of service to allow for presumptive service connection for a chronic disease, but instead were first diagnosed decades after service. For similar reasons, a nexus through a continuity of symptomatology is not available. See Walker, supra.

Finally, the Veteran has asserted that his shoulder disability is secondary to his neck disability. However, because the Veteran’s neck disability is not entitled to service connection, no other condition may be warranted service connection on a secondary basis to a neck disability. 38 C.F.R. § 3.310.

Accordingly, the preponderance of the evidence is against the claims of service connection for respiratory, neck, and shoulder disabilities. As such, the benefit of the doubt doctrine is not for application, and service connection must be denied.

REASONS FOR REMAND

7. Entitlement to recognition of S.D. as the helpless child of the Veteran on the basis of permanent incapacity for self-support prior to age 18 is remanded.

The Veteran asserts that his daughter, S.D., was rendered incapable of self-support prior to attaining the age of 18. VA provides certain benefits for a child of a veteran who is shown to be permanently incapable of self-support by reason of mental or physical defect by or before his or her 18th birthday. See 38 U.S.C. § 101(4)(A)(ii); 38 C.F.R. §§ 3.57(a)(1)(ii), 3.356. The focus of analysis is on the individual’s condition at the time of his or her 18th birthday. See Dobson v. Brown, 4 Vet. App. 443 (1993). The Board finds a remand for a VA opinion is necessary to assist in determining if S.D. became permanently incapable of self-support by reason of a mental or physical disability prior to attaining the age of 18 to cure the pre-decisional duty to assist error that occurred prior to the Veteran’s election to enter the RAMP program. Additionally, efforts to obtain any Social Security Administration (SSA) records for S.D. should also be made. 

The matter is REMANDED for the following action:

1. Obtain any disability determination made by SSA related to S.D., as well as any medical records. 

2. Then obtain a medical opinion to determine whether it is at least as likely as not (50 percent or greater probability) that the Veteran’s daughter, S.D., became permanently incapable of self-support by reason of a mental or physical condition prior to attaining 18 years of age. In addressing this question, please consider the S.D.’s assessment results from August 1980, October 1979, February 1981, and January 1993. 

 

S. BUSH

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD S.S. Mahoney, Associate Counsel