**Kenneth D. WALLIN, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 97–1023.

United States Court of Veterans Appeals.

Oct. 16, 1998.

Samuel M. Tumey was on pleadings for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Mary Ann Flynn were on pleadings for appellee.

Before NEBEKER, Chief Judge, and IVERS and GREENE, Judges.

IVERS, Judge:

The veteran appeals from a May 8, 1997, Board of Veterans' Appeals (BVA or Board) decision denying, as not well grounded, the appellant's claim for service connection for ankylosing spondylitis as secondary to service-connected bacillary dysentery. Record (R.) at 3. The Secretary has filed a motion for summary affirmance. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will reverse the decision of the Board and remand the matter for adjudication.

## I. FACTS

The veteran served on active duty from December 1947 to December 1951. R. at 2. In August 1948, while admitted to a service hospital for observation for malaria (R. at 53), the veteran was diagnosed with bacillary dysentery. R. at 36–37. Bacillary dysentery is "an infectious disease caused by bacteria of the genus Shigella, and marked by intestinal pain, tenesmus, diarrhea with mucus and blood in the stools, and more or less toxemia." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 514 (28th ed.1994) [hereinafter DORLAND'S]. His separation examination report shows that the spine was found to be normal and that the veteran was neurologically well. R. at 76–82. In April 1965, the veteran was diagnosed with costal chondritis in a VA hospitalization summary. R. at 129. "Costal chondritis" is an "inflammation of the cartilage ... pertaining to a rib or ribs." DORLAND'S at 320. The summary reveals that he had nine months of chest pain which was preceded by an upper respiratory infection (R. at 129–30). The radiological report indicates moderate degenerative changes of the cervical spine, most marked at the C6–7 level. R. at 105. (The Court notes that records from St. Luke's Hospital of Duluth, Minnesota, in both May 1969 and May 1979, indicate a history of whiplash in the 1960's. R. at 154–63, 248). Also in April 1965, the regional office granted service connection for dysentery but determined the condition to be noncompensable. R. at 133.

Between November 1989 and August 1992, VA outpatient treatment records show treatment for the veteran's back complaints. R. at 199–225. They are negative for a link to bacillary dysentery (*id.*), but records from St. Luke's Hospital, dated October 1992, indicate that the veteran had HLA–B27 positive ankylosing spondylitis. R. at 257. "Ankylosing spondylitis" is "the form of rheumatoid arthritis that affects the spine. It is a systemic illness of unknown etiology, affecting young males predominantly, and producing pain and stiffness as a result of inflammation of the sacroiliac, intervertebral, and costovertebral joints." DORLAND'S at 1563. In his July 1993 testimony before the Board, the veteran theorized about a link between the bacillary dysentery that he had acquired in service, and his current ankylosing spondylitis. R. at 287. The veteran's contentions were admittedly based on his own diagnosis, and he claimed to have learned of the link from reading medical texts. R. at 288. One such text, titled UNDERSTANDING ARTHRITIS AND RHEUMATISM (Malcolm I.V. Jayson, M.D., and Allan St. J. Dixon, M.D.) states, "It is likely that [ankylosing spondylitis] is a reaction by the immune system of susceptible individuals to bacterium that lives in the large bowel of many people. B27 positive individuals tend to develop a reactive arthritis after exposure to certain bacteria, including *Shigella* ...." R. at 269. Accordingly, the veteran asserted that if people with the HLA–B27 gene contract bacillary dysentery, the immune system reacts and the combination of the gene and the dysentery can lead to ankylosing spondylitis. R. at 289. In October 1994, the veteran submitted excerpts from a medical text titled DISEASES (June Norris, et al., 1993). R. at 301–07. This text states that ankylosing spondylitis usually occurs as a primary disorder, but also may occur in association with gram-negative dysentery. R. at 303.

In October 1994, VA afforded the veteran a medical examination. The examining physician said that, even though the veteran's previous gastrointestinal infections could lead to Reiter's Syndrome, the physician was unaware of such an infection leading to ankylosing spondylitis. R. at 319. "Reiter's syndrome" is "a triad of symptoms of unknown etiology ... chiefly affecting young men, and usually running a self-limited but relapsing course. Most affected patients have increased levels of histocompatibility antigen HLA–B27. It possibly represents an abnormal immune response to certain infections, perhaps related to hereditary susceptibility." DORLAND'S at 1638. The physician denied that the veteran's condition was Reiter's Syndrome, and explained that it was unlikely that the veteran's dysentery had led to ankylosing spondylitis. *Id.* In December 1994, a second VA physician was asked to review the medical texts submitted by the veteran. This physician also discredited the veteran's contentions that the texts established a link between his bacillary dysentery and his ankylosing spondylitis. R. at 328. However, he admitted that dysentery may cause Reiter's syndrome, but denied any evidence that such dysentery can lead to ankylosing spondylitis. *Id.* In April 1996, a third VA physician indicated that the CECIL TEXTBOOK OF MEDICINE (James B. Wyngaarden, et al, eds., 19th ed.), submitted by the veteran, was not supportive of the veteran's claim. R. at 378. Again, in December 1996, that same VA physician denied a link between the veteran's in-service bacillary dysentery and his current ankylosing spondylitis. R. at 398. He further stated that simply having the HLA–B27 gene does not prove that the two conditions are linked. R. at 398.

In May 1997, the Board determined that the veteran's claim was not well grounded. R. at 1–10. A notice of appeal was timely filed.

## II. ANALYSIS

■ "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a); *Carbino v. Gober,* 10 Vet.App. 507 (1997); *Anderson v. Brown,* 9 Vet.App. 542, 545 (1996). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). In *Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992), the Court held that a claim must be accompanied by supportive evidence and that such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible." For a claim to be well grounded, there generally must be (1) a medical diagnosis of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. *See Anderson, supra; Caluza v. Brown,* 7 Vet. App. 498, 506 (1995), *aff'd,* 78 F.3d 604 (Fed. Cir.1996) (table). The determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *Anderson, supra; Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993).

■ In should be noted that secondary service connection claims must also be well grounded. 38 U.S.C. § 5107(a); *Locher v. Brown,* 9 Vet.App. 535, 538 (1996); *Jones v. Brown,* 7 Vet.App. 134, 136–38 (1994). Because the veteran claims that his ankylosing spondylitis was caused by his service-connected bacillary dysentery, he must .show service connection for ankylosing spondylitis on a secondary basis; that is, there must be evidence that the disability claimed is proximately due to or the result of his service-connected disease. 38 U.S.C. § 1110; 38 C.F.R. § 3.310(a).

■ Where the determinative issue involves etiology or a medical diagnosis, competent medical evidence that a claim is "plausible" or "possible" is the threshold requirement for the claim to be well grounded. *Heuer v. Brown,* 7 Vet.App. 379, 384 (1995); *Grottveit,* 5 Vet.App. at 93. Such determinations require "specialized knowledge or

training," and, therefore, cannot be made by a lay person. *Layno v. Brown*, 6 Vet.App. 465, 470 (1994); *see also Espiritu v. Derwinski*, 2 Vet.App. 492, 495 (1992). Lay persons are not competent to offer medical opinions because the "question[s] involved [do] not lie within the range of common experience or common knowledge." *Id.* (quoting *Frye v. United States*, 293 F. 1013, 1014 (1923)).

■ Although this Court has previously found a veteran's lay opinion, coupled with reliance on medical treatises, to be insufficient to satisfy the medical nexus requirements necessary to an award of service connection, the Court has not pronounced such treatise evidence as insufficient to well ground a claim. In *Libertine v. Brown*, the Court held that the veteran's statements, taken together with published medical authorities, did not provide the requisite medical evidence to demonstrate a causal relationship between that veteran's claimed disability and his service. 9 Vet.App. 521, 523 (1996). However, in *Libertine*, the Court did not address the validity and credibility of medical treatises as evidence. It simply found that, if such evidence is presented, it must demonstrate a connection between service incurrence and a present injury or condition. *Id.*

In *Beausoleil v. Brown*, the Court addressed the specificity required when attempting to link a service-incurred injury to a present condition. 8 Vet.App. 459 (1996). The Court held that a VA physician's statement, that "Trauma to the chest can cause restrictive lung disease," did not link chest trauma specifically to the veteran's current condition. *Id.* at 463. The Court ruled this fact-specific evidence to be insufficient due to the "generic statement about the *possibility* of a link between chest trauma and restrictive lung disease." It stated that "[s]uch a statement is too general and inconclusive to make the claim well grounded in the appellant's case." *Id.*

In *Sacks v. West*, this Court held that a medical article that contained a generic statement regarding a possible link between a service-incurred mouth blister and a present pemphigus vulgaris condition, did not satisfy the nexus element of a well-grounded claim. 11 Vet.App. 314 (1998). The Court consid-

ered this to be analogous to such statements as "occasional joint pain is usually an early symptom of arthritis or ... an incident of chest pain will usually occur before heart disease is diagnosed." *Id.* at 317. As a result, the Court did not accept this particular medical treatise evidence as sufficient to demonstrate the requisite medical nexus for a well-grounded claim. However, the Court cautioned that its "holding does not extend to a situation where medical article or treatise evidence, standing alone, discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least plausible causality based upon objective facts rather than on an unsubstantiated lay medical opinion." *Id.*

Similarly, the recognition of medical treatise evidence is common in other areas of the law. For example, for the purposes of trial, the Federal Rules of Evidence allow for the admissibility of such treatises. *See* FED. R.EVID. 803(18). The rule provides for the admissibility of the following evidence as an exception to the hearsay rule:

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

*Id.*

■ Prior to *Sacks*, this Court had acknowledged the usefulness of medical treatise evidence as reliable authority. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991) (The Court found that "[i]f the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by ... citing recognized medical treatises in its decisions that clearly support its ultimate conclusions"); *Murphy*, 1 Vet.App. at 81 (Court decided that BVA decisions must include "reasons and bases"

514

which can "include relevant portions of medical treatises and journals"). However, and more significant to this analysis, this Court must determine whether such evidence can be sufficient to well ground a claim for service connection. As previously discussed, it is necessary to provide medical evidence that is specific with regard to the causal link between a veteran's past and present disabilities. However, it is important to note this Court's holding in *Robinette v. Brown*, that in order for a claim "to be well grounded [it] need not be supported by evidence sufficient for the claim to be granted. Rather, the law establishes only a *preliminary* threshold of plausibility with enough of an evidentiary basis to show that the claim is capable of substantiation." 8 Vet.App. 69, 76 (1995); *see also Alemany v. Brown*, 9 Vet.App. 518, 519 (1996) (holding medical evidence as to nexus to service expressed as "possible" suffices for that aspect of a well-grounded claim); *Molloy v. Brown*, 9 Vet.App. 513, 516 (1996) (citing *Lathan v. Brown*, 7 Vet.App. 359, 366 (1995) (illustrating that medical opinions need not 'be expressed in terms of certainty in order to serve as the basis for a well-grounded claim")). According to this Court's decision in *Grottveit*, "where the determinative issue involves medical causation or a medical diagnosis, competent medical evidence to the effect that the claim is 'plausible' or 'possible' is required." 5 Vet.App. at 93.

 In this case, the veteran has unquestionably satisfied the first two requirements of *Caluza* by obtaining a medical diagnosis of a current disability caused by ankylosing spondylitis (R. at 172), and by successfully using service medical records to demonstrate the in-service occurrence of bacillary dysentery (Shigella) (R. at 36–37). As for the third requirement of *Caluza*, the veteran has presented medical evidence in the form of medical treatises in an attempt to establish a nexus between his in-service disease and his current disability. He has attempted to show that, because of his genetic predisposition, he has a heightened risk of developing ankylosing spondylitis and, unlike the facts in *Libertine, Beausoleil*, and *Sacks*, the veteran in this case has submitted medical evidence that discusses the plausibility of such a link.

The evidence here does not simply provide speculative generic statements not relevant to the veteran's claim, as in cases previously before the Court. Instead, as allowed by the Court in *Sacks*, this treatise evidence "standing alone, discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least plausible causality based upon objective facts rather than on an unsubstantiated lay medical opinion." 11 Vet.App. at 317.

In this case, the veteran has offered evidence that is deemed plausible, and thereby satisfies the initial burden of 38 U.S.C. § 5107(a) that a claim be well grounded.

### III. CONCLUSION

For the reasons stated above, the Court holds the veteran's claim to be well grounded. Thus, the Board's May 8, 1997, decision is REVERSED and the matter is REMANDED for adjudication on the merits. A new decision must be supported by an adequate statement of reasons or bases under 38 U.S.C. § 7104(d)(1) and *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990).