Citation Nr: 1826228 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 07-37 095 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for a vision/eye disability, to include as secondary to service-connected migraine headaches.

2. Entitlement to service connection for peripheral neuropathy of the bilateral hands, to include as secondary to service-connected frostbite.

3. Entitlement to service connection for a right wrist disability, to include degenerative joint disease, carpal tunnel syndrome, and ankylosis, to include as secondary to service-connected frostbite.


REPRESENTATION

Appellant represented by: Disabled American Veterans




ATTORNEY FOR THE BOARD

B. N. Quarles, Associate Counsel


INTRODUCTION

The Veteran served on active duty from November 1986 to September 1992, with three months and four days of prior active service.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.
 
In his November 2007 VA Form 9, the Veteran requested a hearing before the Board in conjunction with his appeal. He ultimately withdrew that request in April 2012. The Board remanded the Veteran's claims in August 2012, May 2015, and May 2017 for further development. 

The issues of entitlement to service connection for peripheral neuropathy of the bilateral hands and entitlement to service connection for a right wrist disability are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The preponderance of the evidence is against a finding that the Veteran has an eye disorder incurred during service, caused by service, or secondary to migraine headaches.




CONCLUSION OF LAW

The criteria for service connection for a vision/eye disability are not met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

As a preliminary matter, the Board has reviewed the claims file and finds that there exist no deficiencies in VA's duties to notify and assist that would be prejudicial and require corrective action prior to a final Board determination. See 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159; see also Bryant v. Shinseki, 23 Vet. App. 488 (2010) (regarding the duties of a hearing officer); Mayfield v. Nicholson, 20 Vet. App. 537 (2006) (corrective action to cure a 38 C.F.R. § 3.159(b) notice deficiency); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004) (timing of notification).

The Board also notes that, to the full extent possible, VA complied with all prior remand instruction requests, and there exist no deficiencies in VA's duties to notify and assist in that regard outside of the issue remanded below in order to comply with prior remand instructions. See Stegall v. West, 11 Vet. App. 268 (1998) (a remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order); but see D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required. The Veteran waived RO review of newly submitted evidence in March 2018.

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active military, naval or air service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in active service. 38 C.F.R. § 3.303(d).
Establishing service connection generally requires medical evidence or, in certain circumstances, lay evidence of the following: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009).

Secondary service connection may be granted for a disability that is proximately due to, or aggravated by, a service-connected disease or injury. 38 C.F.R. § 3.310. In order to prevail on the issue of entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

The Veteran contends that his eye/vision condition is secondary to his service-connected migraine disability. The Veteran's service treatment records (STRs) are negative for any eye and or vision treatments. His vision was 20/20 for both distant and near vision in his enlistment and separation examinations. The Veteran's vision was listed as normal in a November 1998 VA examination. In August 2007 VA treatment records, the Veteran reported that his migraines were preceded by visual bright spots; in March 2011 VA treatment notes the Veteran reported he experienced visual scintillations as black or white spots moving in front of his eyes; and in July 2013 VA treatment notes the Veteran reported blurred vision in association with migraines.

In September 2013, the Veteran was afforded a VA examination. The examiner did not review any records. The examiner noted the Veteran had a diagnosis for pterygium of the left cornea which was a developmental error that did not affect the Veteran's vision. An April 2016 VA examiner noted the pterygium of the left cornea was asymptomatic and did not affect the Veteran's vision. The examiner opined the Veteran's subjective vision symptoms were classic elements of migraine syndrome and were not amenable to objective confirmation through any diagnostic modalities. The July 2017 VA examiner also provided a negative nexus opinion between the Veteran's pterygium and the Veteran's active service. The examiner provided that pterygium is typically asymptomatic and according to medical literature has a multifactorial etiology consisting of genetic predisposition and environmental exposures like sun, dust and wind. It has no nexus whatsoever to the central nervous system headache syndromes. The examiner also opined the pterygium was not aggravated by the Veteran's service-connected condition as the pterygium was stable and there was no demonstrable aggravation in the record. 

The Veteran has a diagnosis for pterygium, but the condition is asymptomatic and the probative evidence of record provides negative nexus opinion in relation to the disability and the Veteran's service on a direct and secondary basis. The record is negative for a medical opinion relating the Veteran's vision/eye condition to active service. The Board also notes, the April 2016 examiner opined the symptoms were classic elements of a migraine syndrome. The Veteran's eye disability is asymptomatic and does not affect his vision. Furthermore, as the Veteran's record is negative for any objective vision disabilities, to separately service-connect the Veteran for symptoms of an already service-connected disability without a different etiology would be considered pyramiding. 38 C.F.R. § 4.14. 

The Board acknowledges that the Veteran is competent to observe readily identifiable symptoms, including vision changes. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). That said, the Veteran lacks the medical training and credentials necessary to offer a competent diagnosis of a chronic visual disorder, or to ascertain whether or not his symptoms are attributable to an already service-connected disorder. Consequently, his lay opinion in this case lacks probative value, particularly in comparison to the aforementioned 2017 VA examiner's opinion, which was based upon a claims file review and contains a clearly articulated rationale. 

Accordingly, as the preponderance of the evidence is against the claim for service connection for a vision/eye condition, the claim must be denied. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).





ORDER

Entitlement to service connection for a vision/eye disability, to include as secondary to service-connected migraine headaches is denied.


REMAND

Unfortunately, further development is necessary before the Board can adjudicate the Veteran's service connection claims for bilateral neuropathy of the hands and right wrist arthritis, ankylosis, and carpal tunnel syndrome. 

The Board finds that VA has not met its duty to assist the Veteran in obtaining an adequate examination for the purposes of rendering a decision in the instant appeal. See 38 C.F.R. § 4.2. The Veteran was afforded a VA examination in July 2017. When addressing the Veteran's peripheral neuropathy of the hands, he found no evidence of neuropathy, and provided a negative nexus opinion based on that finding. The examiner also did not perform EMG studies because the history and physical examinations of record failed to justify further diagnostics in his opinion. 
The Board finds the July 2017 examination, opinion, and rationale inadequate. During the September 2013 examination, the examiner cited EMG studies from April 2013 which found mild, demyelinating sensory median neuropathy of the right wrist. The examiner went on to provide a negative nexus opinion as he determined the right carpal tunnel syndrome was due to chronic degenerative changes associate with aging. There is evidence of a disability during the appeals period and the new examination must address such disability as "current," even if the examiner does not find evidence of the disability on examination. See McClain v. Nicholson, 21 Vet. App. 319 (2007). Additionally, the July 2017 examination relied on an inaccurate history of the of Veteran's EMG findings in the record. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that a medical opinion based on an inaccurate factual premise has no probative value).

The Veteran's claim for a right wrist disability must also be remanded for an inadequate examination. The July 2017 examiner found no evidence of a wrist disability, to include arthritis, ankylosis, and carpal tunnel syndrome. However, as stated above, there is contrary evidence in the Veteran's medical record. The September 2013 peripheral nerve examiner opined the Veteran's carpal tunnel was caused by chronic degenerative changes; however, the July 2017 examiner found no evidence of arthritis. These two findings are adversarial and must be explained in an addendum opinion. In addition, there is evidence of carpal tunnel syndrome during the pendency of the appeal, and therefore there is a finding of a current disability in accordance with McClain. 

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran and request authorization to obtain any outstanding records pertinent to the claim, including any private treatment records following proper VA procedures (38 C.F.R. § 3.159(c)).

2. After completing the requested development, forward the Veteran's claim file to the July 2017 examiner, and if that individual is unavailable, forward the Veteran's claims file to a qualified medical professional in order to obtain new VA peripheral nerve and orthopedic medical opinions concerning the Veteran's right wrist and bilateral hand disorders. 

A. The examiner must identify all right wrist disorders found to be present at any time during the appeal period, including any degenerative joint disease, carpal tunnel syndrome, and/or ankylosis diagnoses in the record.

Then, for each right wrist disorder found to be present during the appeal period, the examiner must:

i. Provide an opinion as to whether it is at least as likely as not (defined as a 50 percent probability or greater) that the right wrist disorder had its clinical onset during active service or is related to any incident of service, including exposure to cold weather which is presumed to have occurred.

ii. Provide an opinion as to whether it is at least as likely as not (defined as 50 percent probability or greater) that the right wrist disorder was caused or aggravated by the Veteran's service-connected frostbite residuals, of the right hand (aggravation means the disability increased in severity beyond its natural progression).

B. The examiner must identify whether the Veteran had peripheral neuropathy of his hands at any point during the appeal period (i.e., since receipt of his December 2005 claim). Then, if the Veteran is found to have had peripheral neuropathy of his hands at any point throughout the appeal period, the examiner must:

i. Provide an opinion as to whether it is at least as likely as not (defined as a 50 percent probability or greater) that the Veteran's peripheral neuropathy of the hands had its clinical onset during active service or is related to any incident of service, including exposure to cold weather which is presumed to have occurred.

ii. Provide an opinion as to whether it is at least as likely as not (defined as 50 percent probability or greater) that the peripheral neuropathy of the hands was caused or aggravated by the Veteran's service-connected frostbite residuals of the right hand; cold injury residuals of the left hand; and/or left wrist fracture (aggravation means the disability increased in severity beyond its natural progression).

The absence of evidence of in the treatment records cannot, standing alone, serve as the basis for a negative opinion. The examiner must address the September 2013 VA examination which found right carpal tunnel syndrome due to chronic degenerative changes. The examiner must provide a comprehensive report including complete rationales for all opinions and conclusions reached, citing the objective medical findings leading to the conclusions. Any evidence contrary to the examiner's diagnoses and opinion must be explained in the rationale. 

If an examination is deemed necessary, such should be scheduled.

3. Finally, after completing the above actions, as well as any other development that may be warranted, readjudicate the Veteran's claims in light of all the evidence of record. If the benefits sought on appeal remain denied, a Supplemental Statement of the Case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and arguments on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This appeal must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
A. C. MACKENZIE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs