﻿Citation Nr: AXXXXXXXX
Decision Date: 05/14/19 Archive Date: 05/13/19

DOCKET NO. 180921-411
DATE: May 14, 2019

ORDER

Entitlement to service connection for a left thigh disability, to include as secondary to a service-connected disability, is granted.

Entitlement to service connection for sleep apnea is granted.

REMANDED

Entitlement to service connection for an acquired psychiatric disorder, to include as secondary to a service-connected disability, is remanded.

Service connection for a pulmonary heart condition, also claimed as coronary artery disease, to include as secondary to a service-connected disability, is remanded.

FINDINGS OF FACT

1. The Veteran’s left thigh disability is secondary to his service-connected lumbar strain with degenerative disc disease. 

2. Resolving reasonable doubt in the Veteran’s favor, his sleep apnea began during active service.

CONCLUSIONS OF LAW

1. The criteria for service connection for a left thigh disability as secondary to a service-connected lumbar strain with degenerative disc disease are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.310. 

2. The criteria for service connection for sleep apnea have been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from March 1978 to March 1998. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the August 2018 RAMP rating decision considered the evidence of record as of April 19, 2018, the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested Direct Review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Evidence was added to the claims file during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 20.300). The Veteran may file a Supplemental Claim and submit or identify this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Service connection

Service connection may be granted for disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110, 1131; 38 C.F.R. § 3.303. Further, service connection may be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

To establish a right to compensation for a present disability, a veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Holton v Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

Alternatively, service connection may be granted on a secondary basis for a disability that is proximately due to (caused) or permanently worsened beyond its natural progression (aggravated) by a service-connected disease or injury. See 38 C.F.R. § 3.310; see also Allen v. Brown, 7 Vet. App. 439, 448-49 (1995) (en banc). Secondary service connection requires (1) a current disability; (2) a service-connected disability; and (3) a nexus between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998). 

1. Entitlement to service connection for a left thigh disability, to include as secondary to a service-connected disability.

The Veteran seeks service connection for a left thigh condition, which he contends was caused by his service-connected musculoskeletal disabilities.

At the outset, the Board notes the Veteran has been granted service connection for degenerative disc disease of the lumbar spine effective from April 1998. 

The medical evidence of record shows the Veteran has received treatment for pain and sensory symptoms on his left thigh. VA treatment records dated May 2013 reflect reports of back pain radiating down the left leg to the groin and thigh region, as well as pain in the femur area with standing. The Veteran was given a preliminary diagnosis of L3 radiculopathy. Thereafter, he was evaluated by a VA neurosurgeon, who recorded the Veteran’s symptoms as low back and left anterior thigh pain and decreased sensation on the anterolateral thigh. The neurosurgeon stated that the diagnostic imaging revealed mobile anterolisthesis of L3 on L4 and lumbar stenosis at L3-4. Further, the neurosurgeon diagnosed the Veteran with left L3 radiculopathy, moderate lumbar stenosis, and mildly mobile spondylolisthesis of L3-4 with moderate neurogenic claudication. Similarly, January 2014 VA neurology notes show reports of low back and left thigh pain with occasional tingling and numbness on the left thigh, which was diagnosed as spondylolisthesis of L3-4 with low back and leg pain. 

In consideration of the foregoing, the Board is satisfied that all elements of service connection on a secondary basis have been met. Notably, the above-described medical evidence demonstrates a nexus between the Veteran’s left thigh disability and his service-connected lumbar spine disability. As such, service connection is granted.

2. Entitlement to service connection for sleep apnea

The Veteran contends that his sleep apnea originated during service and continues to the present. He recalls having chronic sleep deprivation, daytime sleepiness, slow reflexes, and poor concentration, noting that these symptoms started in service. Further, he asserts he reported his sleeping problems on multiple occasions during service.

The AOJ found that the Veteran has a current diagnosis of sleep apnea.

The question in this case, is whether a causal relationship exists between the Veteran’s sleep apnea and his active military service.

Upon a review of the record and having resolved all reasonable doubt in favor of the Veteran, the Board finds a causal relationship or nexus exists between his sleep apnea and service. The competent evidence of record shows that the symptoms currently attributable to the Veteran’s sleep apnea began during his active service.

The Veteran’s February 1978 enlistment examination shows no reports or diagnosis of a sleep disorder. However, his January 1991 and November 1997 medical examinations reflect reports of frequent trouble sleeping. Further, a May 1998 VA examination report shows the Veteran stated he had been having sleep problems for approximately ten years (since 1988), which included difficulty falling asleep and sleeping more than three hours a night. The examiner noted the Veteran had multiple musculoskeletal aches and pains and diagnosed him with sleep disturbance secondary to his physical condition.

In an October 2017 statement, the Veteran’s spouse asserted that she married the Veteran approximately 18 months after he started his active military service, and have been married for 38 years. She stated that after approximately five years of service, the Veteran began to experience sleeping problems, noting that he would go for days without sleep. Further, she stated that when the Veteran was able to sleep, he would snore very loud and would stop breathing on many occasions, to the point that she had to shake him. Additionally, the Veteran’s spouse stated that they were not aware that the Veteran’s sleep problems could be associated with a serious condition and they thought the snoring was related to being tired. 

The Veteran’s claim is also supported by lay statements submitted by his fellow servicemembers. Sergeant First Class (SFC) W.T. stated that he served with the Veteran from 1985 to 1987, noting that they were deployed on numerous field training exercises and overnight commitments. W.T. recalled the Veteran snored loudly and would stop breathing while asleep, to the point that fellow soldiers were concerned about the Veteran’s wellbeing. Similarly, SFC A.M.., who also served with the Veteran from 1985 to 1987, stated that they would occasionally sleep in the same truck during field training exercises. A.M. remembered that the Veteran was observed snoring very loud on numerous occasions and some soldiers complained about not being able to sleep due to the Veteran’s snoring. Finally, Master Sergeant (MSG) B.M., who served with the Veteran from 1995 to 1998, stated that during field training exercises, the Veteran snored so loudly that other soldiers complained about his snoring. 

The Board notes that the Veteran is competent to report that he experienced sleep deprivation, daytime sleepiness, slow reflexes, and poor concentration during and since service. The Veteran’s spouse is competent to report that the Veteran had difficulty falling asleep, snored loudly, and stopped breathing while asleep and that these symptoms began during the Veteran’s active service. Further, his fellow servicemembers are competent to report that the Veteran snored loudly and stopped breathing while asleep. See 38 U.S.C. § 1154; 38 C.F.R. § 3.303; see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). Their reports are credible, as they are internally consistent and consistent with contemporaneous reports of frequent sleep problems. 

In sum, the Board finds the preponderance of the evidence is in favor of finding that the Veteran’s sleep apnea began during his active service. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. As such, service connection is granted.

REASONS FOR REMAND

1. Entitlement to service connection for an acquired psychiatric disorder, to include as secondary to a service-connected disability.

At the outset, the Board is cognizant that the Court of Appeals for Veteran’s Claims (Court) has stated that when a veteran files a claim for a specific psychiatric condition, VA’s consideration of the claim cannot be limited to only that diagnosis, but must rather consider it as a claim for any mental disability that may reasonably be encompassed by several factors including the claimant’s description of the claim; the symptoms the claimant describes; and the information the claimant submits or that VA obtains in support of the claim. Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009). The record shows the Veteran has claimed service connection for posttraumatic stress disorder (PTSD) and depression. Further, he has been diagnosed with other psychiatric disorders including adjustment disorder with depressed mood. Additionally, PTSD and memory loss have been noted by VA registered nurses. As such, under Clemons, the issue on appeal has been expanded to include all psychiatric disorders however diagnosed.

The Veteran contends his acquired psychiatric disorder originated in service and continues to the present. Specifically, he alleges his acquired psychiatric disorder was the result of multiple stressful events throughout service, as well as due to in-service exposure to toxic substances. In this regard, the Board acknowledges the Veteran’s exposure to toxic substances is confirmed by his service treatment records (STRs). Alternatively, the Veteran alleges his acquired psychiatric disorder was due to or aggravated by his service-connected disabilities.

The issue of entitlement to service connection for an acquired psychiatric disorder is remanded to correct a duty to assist error that occurred prior to the August 2018 rating decision on appeal. The AOJ obtained a May 1998 VA examination and medical opinion regarding the Veteran’s mental disorders. On that occasion, the examiner found that the Veteran had no psychiatric disorder. In support of this finding, the examiner stated that the Veteran had never had any psychiatric problem and had never taken any psychotropic medications. In doing so, the examiner disregarded the Veteran reports of psychiatric symptoms during service. Moreover, STRs received after the May 1998 VA examination reflect multiple in-service reports of stress, anxiety, depression, and excessive worry, as well as a treatment in March 1978 for anxiety, suicidal and homicidal ideation, and situational maladjustment.

The Board finds the May 1998 VA examination report and opinion are inadequate for adjudication purposes, as the examiner ignored the Veteran’s competent reports of events and symptoms. See Dalton v. Nicholson, 21 Vet. App. 23 (2007). Also, because the proffered opinion is based on inaccurate facts, it is inadequate to adjudicate the claim on appeal. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993). As such, a remand is warranted to obtain an adequate VA examination and opinion.

Further, in his October 2017 Statement in Support of Claim for PTSD, the Veteran described additional in-service stressors occurred in July 1987 and October 1995, which he contends are related to his acquired psychiatric disorder. In support of his statement, the Veteran submitted articles regarding an airplane crash at Fort Bragg in July 1987 and a sniper shooting at Fort Bragg in 1995. On remand, the AOJ must undertake appropriate development to corroborate these stressors, as well as any other stressors reported by the Veteran. 

2. Service connection for a pulmonary heart condition, claimed as coronary artery disease, to include as secondary to a service-connected disability.

The Veteran seeks service connection for a pulmonary heart condition, also claimed as coronary artery disease, which he contends originated in service and continues to the present. Specifically, he asserts he experienced in-service of heart symptoms including a heart murmur, arrhythmia, shortness of breath, dizziness, and fainting. In this regard, the Board acknowledges his STRs reflect multiple reports of heart murmur, dizziness, and fainting. Alternatively, the Veteran alleges that his pulmonary heart condition was caused or aggravated by his service-connected disabilities, which include hypertension, diabetes mellitus, and sleep apnea.

The issue of entitlement to service connection for a pulmonary heart condition is remanded to correct a duty to assist error that occurred prior to the August 2018 rating decision on appeal. The AOJ obtained a July 2008 VA examination and medical opinion regarding the claimed pulmonary heart condition. However, this medical opinion does not provide an adequate rationale regarding whether the Veteran’s pulmonary heart condition had its onset in service or is otherwise related to service.

The July 2008 examiner disregarded the Veteran’s reports of in-service symptoms and treatment, basing his opinion that the Veteran did not have a pulmonary heart condition on the absence of corroborating medical records. The Board notes the examiner did not perform necessary diagnostic testing to diagnose or rule out a pulmonary heart condition. Rather, the examiner relied on evidence of record to support the proffered opinion. Remarkably, the examiner noted the Veteran underwent “recent pulmonary function studies done privately [that] showed questionable restricted involvement which suggested follow-up”. However, the examination report does not indicate that follow-up testing was performed before providing a medical opinion. Further, STRs associated with the record after the July 2008 VA examination show symptoms and treatment for the claimed pulmonary heart condition.

The Board finds the July 2008 VA examination report and opinion are inadequate for adjudication purposes, as the examiner ignored the Veteran’s reports of symptoms during service and since, grounding the opinion on the lack of corroborating evidence. See Dalton v. Nicholson, 21 Vet. App. 23 (2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006). Further, because the proffered opinion is based on inaccurate facts, it is inadequate to adjudicate the claim on appeal. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993). As such, a remand is warranted to obtain an adequate VA examination and opinion.

The matters are REMANDED for the following action:

1. Undertake any indicated development to corroborate the in-service stressors described by the Veteran, to specifically include in his October 2017 Statement in Support of Claim for PTSD. If the events cannot be corroborated, issue a formal finding to this effect, and associate it with the record.

2. Then, schedule the Veteran for a psychiatric examination to determine the nature and etiology of any diagnosed acquired psychiatric disorder. All pertinent evidence of record must be made available to and reviewed by the examiner. Any required studies should be performed, and all clinical findings should be reported in detail. 

Based on a review of the evidence of record, lay statements, and examination results, the examiner should state an opinion with respect to: 

• Whether any diagnosed acquired psychiatric disorder was at least as likely as not (a 50 percent probability or greater) incurred in or aggravated by the Veteran’s active service, or is otherwise etiologically related to his active service, to specifically include as a result of the reported in-service events and exposure to toxic substances. 

• Whether any diagnosed acquired psychiatric disorder was at least as likely as not (1) proximately due to a service-connected disability, or (2) aggravated beyond its natural progression by a service-connected disability, to specifically include his service-connected sleep apnea and musculoskeletal disabilities.

If the examiner concludes that any diagnosed psychiatric disorder was aggravated beyond its natural progression by a service-connected disability, he or she should provide, if possible, a baseline level of disability for such disability prior to aggravation.

• If the Veteran is diagnosed with PTSD, the examiner must explain how the diagnostic criteria are met and opine whether it is at least as likely as not related to a verified in-service stressor. 

• If the Veteran is diagnosed with a personality disorder and an acquired psychiatric disorder, the examiner must opine whether the acquired psychiatric disorder was at least as likely as not superimposed on a personality disorder during active service and resulted in additional disability. 

For the purposes of these opinions, the examiner should note that the Veteran is competent to attest to factual matters of which he had first-hand knowledge, including events and symptoms. If there is a medical basis to support or doubt the history provided by the veteran, the examiner should provide a fully reasoned explanation. 

The examiner must provide a complete rationale for all proffered opinions. 

3. Schedule the Veteran for a VA examination by a clinician with sufficient expertise to diagnose and determine the nature and etiology of the Veteran’s claimed pulmonary heart condition, also claimed as coronary artery disease.

All pertinent evidence of record must be made available to and reviewed by the examiner. Any required studies should be performed, and all clinical findings should be reported in detail.

Based on a review of the evidence of record, lay statements, and examination results, the examiner should state an opinion with respect to:

• Whether any diagnosed pulmonary heart condition was at least as likely as not (a 50 percent probability or greater) incurred in or aggravated by the Veteran’s active service, or is otherwise etiologically related to his active service, to specifically include as a result of symptoms and findings reported during service.

• Whether any diagnosed pulmonary heart condition was at least as likely as not (1) proximately due to a service-connected disability, or (2) aggravated beyond its natural progression by a service-connected disability, to specifically include his service-connected hypertension, diabetes mellitus, and sleep apnea. In doing so, the examiner must consider and discuss the effect of treatments and medications prescribed for the Veteran’s service-connected disabilities.

If the examiner concludes that any diagnosed pulmonary heart condition was aggravated beyond its natural progression by a service-connected disability, he or she should provide, if possible, a baseline level of disability for such disability prior to aggravation.

For the purposes of these opinions, the examiner should note that the Veteran is competent to attest to factual matters of which he had first-hand knowledge, including events and symptoms. If there is a medical basis to support or doubt the history provided by the veteran, the examiner should provide a fully reasoned explanation.

The examiner must provide a complete rationale for all proffered opinions. If the examiner cannot provide the required opinions without resorting to speculation, he or she shall provide a complete explanation as to why that is the case. Further, the examiner must state whether the inability to provide the required opinions is based on a personal limitation or on a lack of knowledge among the medical community at large.

4. Finally, undertake any other development determined to be warranted, and readjudicate the issues on appeal. 

 

T. REYNOLDS

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD C. Martinez, Associate Counsel