Citation Nr: 21050004
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 17-17 027
ODATE: August 13, 2021

ORDER

Entitlement to service connection for left lower extremity osteoarthritis, secondary to service-connected left knee patellofemoral pain syndrome, is granted.

REMANDED

Entitlement to service connection for a sleep disorder, to include as due to an undiagnosed illness or medically unexplained chronic multisymptom illness (MUCMI), or as secondary to service-connected posttraumatic stress disorder (PTSD) and gastroesophageal reflux disease (GERD), is remanded.

Entitlement to service connection for headaches, to include as due to an undiagnosed illness or MUCMI, or as secondary to a sleep disorder, is remanded.

FINDING OF FACT

The Veteran's left lower extremity joint pain, diagnosed as left knee joint osteoarthritis, is associated with her service-connected left knee patellofemoral pain syndrome.

CONCLUSION OF LAW

The criteria for entitlement to service connection for left knee joint osteoarthritis, secondary to service-connected left knee patellofemoral pain syndrome, have been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.310.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the U.S. Navy from May 2005 to May 2009, including service in Southwest Asia during the Persian Gulf War.

In January 2019, the Board of Veterans' Appeals (Board) remanded the issues of entitlement to service connection for left lower extremity joint pain, a sleep disorder, and headaches for further development. Specifically, the Board instructed the regional office (RO) to schedule the Veteran for VA examinations pertaining to her claims.

As an initial matter, the Board notes that the Veteran filed a claim of entitlement to service connection for, inter alia, left lower extremity joint pain. She is service connected for left knee patellofemoral pain syndrome and left lower extremity radiculopathy. See September 2019 Rating Decision Codesheet. However, it is well settled that when a veteran makes a claim, they are seeking service connection for symptoms, regardless of how those symptoms are diagnosed or labeled. See Clemons v. Shinseki, 23 Vet. App. 1 (2009); see also DeLisio v. Shinseki, 25 Vet. App. 45, 53 (2011); Brokowski v. Shinseki, 23 Vet. App. 79, 86-87 (2009). As a March 2020 VA examiner has diagnosed the Veteran with left knee joint osteoarthrosis, the Veteran's claim of left lower extremity joint pain remains before the Board. 

1. Entitlement to service connection for left lower extremity joint pain, secondary to service-connected left knee patellofemoral pain syndrome 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

Service connection may also be established on a secondary basis for a disability which is proximately due to, or the result of, a service-connected disability. 38 C.F.R. § 3.310(a). Secondary service connection may also be established for a disorder which is aggravated by a service-connected disability; compensation may be provided for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. 38 C.F.R. § 3.310(b); Allen v. Brown, 8 Vet. App. 374 (1995). In order to prevail on the issue of secondary service connection, the record must show: (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) medical nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998); see also Allen, supra.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

As will be addressed below, the Board finds that service connection for left lower extremity joint pain, diagnosed as left knee joint osteoarthritis, is warranted on a secondary basis. Consequently, the Board will not address direct service connection further herein.

First, the record shows that the Veteran has been diagnosed with left knee joint osteoarthritis. See March 2020 C&P Exam. Thus, the first element of secondary service connection has been met. Wallin, 11 Vet. App. at 512.

Second, the Board notes that the Veteran is service connected for left knee patellofemoral pain syndrome; thus, the second element of secondary service connection is met. Wallin, 11 Vet. App. at 512.

The remaining question is whether there is a medical nexus between the Veteran's currently diagnosed left knee joint osteoarthritis and her service-connected left knee patellofemoral syndrome. As to this matter, the evidence conflicts.

The Veteran underwent a knee and lower leg conditions VA examination in March 2020, in which the examiner noted a diagnosis of left knee joint osteoarthritis from January 2020. He noted that there were no neurological symptoms that would indicate peripheral neuropathy as the Veteran's extremity symptoms are focused in the knee joint. He opined that the Veteran's lower left extremity joint pain is less likely than not proximately due to or the result of the Veteran's service-connected condition. He explained that right knee conditions do not cause left knee arthritis. However, the examiner went on to note that the Veteran has left knee patellofemoral pain syndrome and that condition predisposes to the development of the arthritis seen of the Veteran's left knee now. Therefore, the Veteran's left lower extremity joint pain is more likely than not caused by the in-service incurrence. The examiner also explained that the natural progression of the left knee patellofemoral pain syndrome includes the potential development of arthritis. 

A medical opinion provided by the March 2020 was associated with the Veteran's claims file in October 2020, in which the examiner found that there was no evidence of a left lower extremity condition beyond those which have already been diagnosed and establish service-connected. He explained that although the Veteran has established left and right knee conditions, there was no evidence that the knee conditions have caused or aggravated the proposed left lower extremity joint pain, a condition for which there is insufficient of pathology to establish diagnosis. 

After careful consideration, the Board finds that the evidence regarding nexus is at least in equipoise. Specifically, though the March 2020 examiner provided a negative nexus opinion, he also acknowledged that the Veteran's service-connected left knee condition predisposes her to arthritis. Furthermore, the Board finds that the examiner appeared to mistakenly say that the Veteran's left lower extremity joint pain was more likely than not caused by an in-service incurrence as opposed to her service-connected left knee patellofemoral pain syndrome, while giving a secondary service connection opinion. Finally, the October 2020 medical opinion noted that the Veteran did not have a diagnosis associated with left lower extremity joint pain, but the examiner already noted that the Veteran has a diagnosis of left knee joint osteoarthrosis. 

When the evidence for and against a claim is in relative equipoise, the Board has an obligation to resolve all reasonable doubt in favor of the Veteran. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Resolving all reasonable doubt in the Veteran's favor, the Board finds that the third element of secondary service connection is established. Wallin, 11 Vet. App. at 512. Thus, service connection left knee joint osteoarthritis, claimed as left lower extremity joint pain, is warranted.

REASONS FOR REMAND

Upon review of the record, the Board finds that the claims must be remanded. The Board sincerely regrets the additional delay caused by this remand but wishes to assure the Veteran that it is necessary for a full and fair adjudication of the claims.

2. Entitlement to service connection for a sleep disorder, include as due to an undiagnosed illness or MUCMI and as secondary to service-connected PTSD and GERD, is remanded.

The Board finds that a VA examination and etiological opinion is warranted for the Veteran's claim. The Veteran contends that her sleep disorder, to include sleep apnea, is related to her service, is due to her Gulf War service as an undiagnosed illness or MUCMI, or is secondary to her service-connected PTSD and GERD. 

The Veteran underwent a VA examination in March 2020, in which the examiner noted a diagnosis of obstructive sleep apnea from 2016. The examiner opined that the Veteran's sleep apnea was less likely than not related to her service or caused or aggravated by her service-connected PTSD and GERD. The examiner noted that GERD might disrupt sleep due to reflux irritation but concluded that there was a lack of evidence supporting GERD as a cause or contributing factor to sleep apnea. 

The Veteran was afforded another sleep disorder VA examination, as well as a Gulf War General Medical examination, in October 2020 provided by the March 2020 VA examiner. The VA examiner concluded that the Veteran's sleep apnea has a clear etiology and a diagnosis that is well-established. He noted that sleep apnea is caused by person-specific physical factors such as obesity and anatomy of the upper airway rather than poorly defined environmental exposures. Finally, he noted that although GERD and PTSD can disrupt sleep, those conditions do not cause or aggravate the upper airway obstruction that causes obstructive sleep apnea. 

Unfortunately, the Board finds that the March 2020 and October 2020 examiner failed to substantially comply with the Board's March 2020 remand directives. Stegall v. West, 11 Vet. App. 268 (1998). In particular, the VA examiner did not address the Veteran's representative April 2017 brief and whether the Veteran's PTSD medication caused or aggravated her sleep apnea. As such, remand for a new examination is warranted to adequately address the nature and etiology of the Veteran's sleep disorder.

3. Entitlement to service connection for headaches, to include a MUCMI and as secondary to a sleep disorder, is remanded.

The evidence indicates the Veteran's headaches may be related to her sleep apnea. See October 2016 C&P Exam. Therefore, the Veteran's claim for this condition is inextricably intertwined with the claim for service connection for sleep disorder remanded herein. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991). Remand of the inextricably intertwined claim is, thus, also required.

In addition, the Board notes that the 2019 VA examiner, while noting that headaches began in bootcamp, did not offer an opinion as to whether the claimed headache disorder onset in or is otherwise related to service other than the claimed Gulf War environmental exposures. Accordingly, additional opinion is warranted.

The matters are REMANDED for the following action:

1. Assist the Veteran in associating with the claims file any relevant outstanding treatment records. 

2. Schedule the Veteran for a VA examination with an appropriate examiner to determine the nature and etiology of the Veteran's sleep disorder. The claims file should be made available to the examiner for review in connection with the examination. 

Based on review of the record and conducting an examination of the Veteran, the examiner should respond to the following: 

(a.) Obtain a detailed history of the Veteran's sleep disorder, to include any and all diagnosed conditions, like sleep apnea, and symptomatology. 

(b.) Identify any diagnoses that pertain to the Veteran's sleep disorder. In identifying any applicable diagnoses, the examiner should conduct all necessary testing to rule out any suspected diagnoses. The examiner should characterize the Veteran's condition as a (1) a disease with a clear and specific etiology and pathophysiology, (2) an undiagnosed illness, (3) a diagnosable but medically unexplained chronic multi-symptom illness of unknown etiology, or (4) a diagnosable chronic multi-symptom illness with a partially explained etiology/pathophysiology. 

(c.) If the examiner determines that the Veteran's sleep disorder has a clear and specific etiology, for each diagnosed condition, the examiner should state whether it is at least as likely as not (i.e., at least a 50 percent probability) that the Veteran's sleep disorder had its onset in or is related to service, to include environmental hazards. 

(d.) For each diagnosed condition, the examiner should state whether it is at least as likely as not (i.e., at least a 50 percent probability) that the Veteran's sleep disorder was caused or aggravated by the Veteran's service-connected PTSD, to include medication used to treat the disorder, and GERD. AN OPINION AS TO BOTH CAUSATION AND AGGRAVATION IS REQUESTED. The examiner must specifically address the Veteran's representative's April 2017 brief. 

(e.) If the examiner finds that the Veteran's sleep disorder was aggravated by her service-connected PTSD, to include medication used to treat the disorder, and GERD, then he/she should specify the baseline level of disability of the sleep disorder prior to aggravation due to the service-connected PTSD and GERD. Note that aggravation means any incremental increase in disability in the sleep disorder (i.e., any additional impairment of earning capacity) resulting from the service-connected condition(s). The examiner must specifically address the Veteran's representative's April 2017 brief. 

The examiner must provide the rationale for all proffered opinions. If the examiner is unable to provide any required opinion, he or she should explain why. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation as to why this is so. If the inability to provide a more definitive opinion is the result of a need for additional information, the examiner should identify the additional information that is needed.

3. Schedule the Veteran for a VA examination with an appropriate examiner to determine the nature and etiology of the Veteran's headaches. The claims file should be made available to the examiner for review in connection with the examination. 

Based on review of the record and conducting an examination of the Veteran, the examiner should respond to the following: 

(a.) Obtain a detailed history of the Veteran's headaches, to include any and all symptomatology. 

(a) determine whether it is at least as likely as not (i.e., at least a 50 percent probability) that the Veteran's headaches had its onset in or is related to service, to include environmental hazards. In addition, the examiner should consider and address the Veteran's report that her headaches began during bootcamp. 

(b.) Determine whether it is at least as likely as not (i.e., at least a 50 percent probability) that the Veteran's headaches were caused or aggravated by the Veteran's sleep disorder. AN OPINION AS TO BOTH CAUSATION AND AGGRAVATION IS REQUESTED. 

(c.) If the examiner finds that the Veteran's headaches were aggravated by her sleep disorder, then he/she should specify the baseline level of disability of the headaches prior to aggravation due to the sleep disorder. Note that aggravation means any incremental increase in disability in the headaches (i.e., any additional impairment of earning capacity) resulting from the sleep disorder. 

The examiner must provide the rationale for all proffered opinions. If the examiner is unable to provide any required opinion, he or she should explain why. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation as to why this is so. If the inability to provide a more definitive opinion is the result of a need for additional information, the examiner should identify the additional information that is needed.

 

 

G. E. Wilkerson

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board T. L. Park, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.