﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/31/19

DOCKET NO. 181210-1429
DATE: October 31, 2019

ORDER

Entitlement to service connection for adhesive capsulitis of the left shoulder, to include as secondary to the Veteran’s service-connected left brachial plexus neuropathy, is denied.

Entitlement to service connection for degenerative disc disease (DDD) of the cervical spine with left upper extremity radiculopathy, to include as secondary to the Veteran’s service-connected left brachial plexus neuropathy, is denied.

Entitlement to a total disability rating based on individual unemployability (TDIU) due to left brachial plexus neuropathy from October 25, 2006 to August 17, 2018 is denied. 

FINDINGS OF FACT

1. The Veteran has been diagnosed with adhesive capsulitis of the left shoulder during the pendency of the present appeal.

2. Service connection has been established for left brachial plexus neuropathy based upon an in-service injury occurring during a ruck march in January 1980.

3. Regardless of the existing grant of service connection and disability rating established for left brachial plexus neuropathy, the preponderance of the evidence, including medical findings from both orthopedists and neurologists, is against finding that a current disabling left brachial plexus neuropathy persists during the period of this appeal.

4. The Veteran has a current diagnosis of DDD of the cervical spine as confirmed by magnetic resonance imaging (MRI) in February 2016. 

5. The Veteran has a current diagnosis of radiculopathy of the left upper extremity as confirmed by electromyography (EMG) procedure in April 2016. 

6. The preponderance of the evidence is against finding that DDD of the cervical spine with left upper extremity radiculopathy began during active service, or is otherwise related to Veteran’s in-service injury and resulting service-connected disability.

7. The evidence does not show that the Veteran is rendered unable to secure and follow substantially gainful employment due to left brachial plexus neuropathy, his only service-connected disability.

CONCLUSIONS OF LAW

1. The criteria to establish service connection for left shoulder adhesive capsulitis as due to service or left brachial plexus neuropathy are not met. 38 U.S.C. §§ 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2018). 

2. The criteria to establish service connection for degenerative disc disease of the cervical spine with bilateral upper extremity radiculopathy as due to service or left brachial plexus neuropathy are not met. 38 U.S.C. §§ 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2018). 

3. The criteria to establish entitlement to a TDIU rating are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.15, 4.16 (2018). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Army as a trainee from October 1979 to March 1980. He was discharged due to a temporary physical disability, acute left brachial plexus neuropathy, for which service connection is now established. 

The Veteran appeared before the undersigned Veterans Law Judge in a videoconference hearing in April 2009 to present testimony on the issue of an increased disability rating for left brachial plexus neuropathy, from which the present appeal regarding TDIU entitlement stems. See Rice v. Shinseki, 22 Vet. App. 447 (2009). 

The Veteran contends that his presently diagnosed adhesive capsulitis of the left shoulder and DDD of the cervical spine with associated radiculopathy are due to the January 1980 in-service injury, or as secondary to his service-connected left brachial plexus neuropathy. 

Of note, the issue of service connection for adhesive capsulitis of the left shoulder comes before the Board as a previously finally denied claim that now requires new and relevant evidence to reopen. However, the Board previously determined that finality as to this issue was negated by the subsequent receipt of service treatment records. 

The Board notes that the rating decisions on appeal were issued in December 2006, February 2017, and September 2017. Multiple prior remands have been issued in this case by the Board of Veterans’ Appeals (Board) for further evidentiary development. In August 2018, the Veteran elected the modernized review system. 38 C.F.R. § 19.2(d). As such, the period on appeal for the TDIU claim here is from the date of filing his increased rating claim through the opt-in for higher level review under the modernized review system as indicated by the dates shown above. 

Medical treatise evidence was added to the claims file by the Veteran’s representative in April 2019 during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. 38 C.F.R. § 20.300 (2018). The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

Service connection may also be granted for a disability which is proximately due to or aggravated by a service-connected disease or injury. 38 C.F.R. § 3.310; Allen v. Brown, 1 Vet. App. 439 (1995). To establish secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) competent evidence establishing a medical relationship between the service-connected disability and the current disability for which compensation is sought. See Wallin v. West, 11 Vet. App. 509 (1998). The necessary medical relationship may be shown by evidence that the nonservice-connected disability is proximately due to or the result of a service-connected disability, or that the nonservice-connected disease or injury increased in severity beyond its natural progression due to a service-connected disability. 38 C.F.R. § 3.310. The latter circumstance is known by the legal term of “aggravation.” 38 C.F.R. § 3.310(b). 

1. The claims of service connection for adhesive capsulitis of the left shoulder, and DDD of the cervical spine with radiculopathy are denied. 

This case is complicated by the fact that the Veteran’s described symptoms of left upper extremity pain, weakness, stiffness, and tingling are similar and potentially overlapping between his service-connected brachial plexus neuropathy, his claimed (diagnosed) adhesive capsulitis of the left shoulder, cervical DDD with radiculopathy, and nonservice-connected disabilities such as left wrist carpal tunnel syndrome. See, e.g., VA opinion, December 2017. In adjudicating these claims, the Board must rely on the competent medical evidence of record which finds a distinction between the service-connected disability and the later occurring conditions. Id. 

On the matter of direct service connection, the question for the Board is whether the Veteran has a current left shoulder adhesive capsulitis, cervical DDD, or cervical radiculopathy disability that began during service or is at least as likely as not related to an in-service injury, event, or disease, to include the January 1980 rucksack injury that led to the Veteran’s separation from military service.

The Board concludes that, although VA treatment and examination records confirm the Veteran now has diagnoses of adhesive capsulitis, cervical DDD, and cervical radiculopathy, the preponderance of the evidence is against finding that any of these disabilities began during his active service or is otherwise related to his documented January 1980 injury.

The Veteran’s service treatment records reflect that on January 7, 1980, “after marching for 15 miles carrying a 70-pound rucksack on his back and shoulders, he developed some strange sensations around the left shoulder and tingling sensation down to the left arm including his fingers. About 48 hours later, he was unable to bend the elbow or to move the left shoulder feely against gravity.” Service treatment record, January 25, 1980. X-rays were negative at the time. The Veteran had no active motion at the level of the elbow against gravity. Weakness of the left triceps muscle and decreased action of the deltoid muscle and trapezius were identified. No sensory changes were noted. Neurological examination showed absent left biceps reflex, but there was normal wrist and finger action with normal muscle strength. The Veteran was diagnosed with “Acute left upper trunk brachioplexus neuropathy, probably secondary to compression trauma with secondary impairment of left arm.” Id. He was referred to a Physical Evaluation Board and it was determined that he no longer met the physical requirements for retention in the Army. The nature of the disability was considered temporary, and he was placed on the Temporary Disability Retired List effective in March 1980. Department of the Army orders, March 1980. 

As such, the occurrence of an in-service injury is well established. Notably however, there is no evidence of any cervical spine disability during service as x-rays were entirely negative at the time. Adhesive capsulitis was also not identified during service. Service treatment record. Nonetheless, as an in-service brachial plexus neuropathy injury and current diagnoses of left shoulder adhesive capsulitis, cervical DDD, and cervical radiculopathy are documented within the record, the first two elements necessary are found to be met and the Board now turns to the final requirement for direct service connection that a causal relationship is shown between the current claimed disabilities and the January 1980 rucksack injury. 

An April 2008 VA examiner opined that the Veteran’s left shoulder adhesive capsulitis, noted to be a very common problem amongst individuals of the Veteran’s age, is at least as likely as not caused by or a result of the left upper extremity brachial neuropathy due to carrying his backpack. However, the opinion is not adequate because the examiner also stated in contradiction that it is “very possible that his left shoulder problem is simply an idiopathic problem that could easily have come about through his normal activities of daily work outside of the military.” VA examination report by Dr. TH, April 2008. The examiner provided no supporting medical rationale that would allow the Board to weigh this evidence, wherein the opinion itself is also internally contradictory.

Subsequently in June 2008, this physician provided an addendum clarification stating that his April 2008 examination was specifically to confirm whether or not the Veteran’s current left shoulder deficit was related to the service-connected pathology of left upper extremity brachial neuropathy. He stated that during his April 2008 examination, he was unable to confirm any significant evidence of a true brachial plexopathy, and that his only finding was of significant limitation of motion in the left shoulder due to adhesive capsulitis. In other words, at the time of the April 2008 examination, the Veteran had a diagnosed left shoulder adhesive capsulitis, but did not have a diagnosed left brachial neuropathy existing at that time.

Based on not finding any significant motor deficit regarding the brachial plexus, he then clarified his opinion stating that the Veteran’s currently diagnosed adhesive capsulitis is not directly related to the service-connected injury. He found the left shoulder stiffness and decreased range of motion symptoms the Veteran experienced in April 2008 are due to adhesive capsulitis and are less likely as not caused or a result of the service-connected brachial plexus neuropathy injury. Addendum opinion by Dr. TH, June 2008. 

Of note, while this competent, credible and probative addendum opinion did not use the precise term “aggravation” in addressing any possible causal relationship between the diagnosed left shoulder adhesive capsulitis and the Veteran’s service-connected brachial plexus neuropathy, the Board finds that by opining that no current brachial plexus neuropathy presently exists, further delay in adjudicating this claim to obtain a medical opinion regarding aggravation by a disability that has resolved and no longer exist would be futile. For this reason, the opinion that the adhesive capsulitis was not caused or a result of the Veteran’s service-connected brachial plexus neuropathy is found to be adequate for the purposes of the secondary service connection determination herein. 

An additional April 2008 examination conducted by a different provider focused on the neurological elements of the claim. This examiner found the Veteran to be a very difficult historian who was very vague regarding any specifics such as what aggravates or relieves his pain symptoms, or any positions that improves or worsens his pain. VA examination, April 2008. Additionally, the examiner noted contradictions in the Veteran’s report such as his statements that his left shoulder never stopped hurting and that he was weak, but also reporting successful employment for years in heavy labor positions such as a logger and a textile mill worker. Id. 

This examiner stated that most upper brachial plexus injuries such as the Veteran’s rucksack injury heal rapidly within a few weeks to months, as they are generally thought to be demyelinating lesions from local compression. The examiner states that “Had there been a persistent axonal injury or frank tearing of a nerve there should be evidence of lower motor neuron injury on examination or by EMG study.” However, in this case, the examiner found that clinical examination and EMG were entirely normal and the March 1982 neurology examination closer in proximity to the Veteran’s discharge from active service was also a “completely normal exam.” VA opinion by Dr. FN, April 2008. The examiner did record a subsequent diagnosis of nonservice-connected bilateral carpal tunnel syndrome by EMG study in July 2007. In all, the resulting opinion was that “There is no evidence of persistent problems related to his rucksack injury from 1980.” The Board finds this to be highly probative as the neurology provider clearly supported his reasoning by referencing the prior diagnostic studies showing the absence of brachial plexus neuropathy. 

An October 2009 examiner also found no objective explanation to indicate significant nerve damage residual based on an EMG report of October 2007 and MRI of the cervical spine in April 2009. VA examination, October 2009. 

A subsequent medical opinion offered by a VA examiner in July 2013 offered an alternative theory that the Veteran received an “anatomic misdiagnosis” of his left brachial plexus injury in January 1980. This opining orthopedic surgeon stated that the Veteran’s left upper extremity nerve impairment came from multilevel left cervical radiculopathies identified by EMG in August 2011 that produced a secondary weakness of his left shoulder muscles. Thus, that the nerve impairment affecting his left shoulder muscles is caused by cervical nerve problems and not from a brachial plexus traction injury while carrying a backpack in the Army. In other words, this examiner opined that the weak left shoulder muscles present since 1980 are service-connected, but are due to cervical spine pathology rather than a brachial plexus injury. VA opinion, July 2013. For the reasons discussed further below, this examiner’s theory of misdiagnosis is afforded little probative weight as it does not discuss or appear to take into consideration the negative objective evidence within diagnostic imaging in the form of x-rays and MRIs which showed no cervical spine pathology until decades after military discharge. 

A January 2017 VA examination then documented the Veteran’s cervical radiculopathy symptoms of throbbing pain in the neck, shoulder, and elbow, and chronic weakness of the left arm. This examiner reiterated the findings of prior examinations that found evidence of carpal tunnel syndrome and adhesive capsulitis affecting the left upper extremity (LUE). This examiner found that the original reports note the Veteran’s initial left brachial plexus injury symptoms went away and the Veteran was gainfully employed afterwards. Based on these findings, the examiner opined that diagnosed cervical spine disability was less likely than not proximately due to or the result of the Veteran’s service-connected brachial plexus neuropathy. Instead, the Veteran’s post-service occupation as a logger and textile worker were found to be at least as likely as not responsible for his current LUE symptoms. This examination, however, was incomplete for the purposes of a service connection determination as it did not include an opinion as to whether the Veteran’s service-connected disability aggravated (worsened) his cervical spine disability.

As a result, based upon a November 2017 remand by the Board, an additional medical opinion was then obtained in December 2017. This physician provided a lengthy and detailed report describing both the facts found within the record, not deemed to be in dispute, and his own observations to elaborate those findings based upon his medical knowledge, expertise, and reasoning. 

The opining physician in December 2017 stated that the Veteran’s service treatment records are devoid of any reference to, diagnosis of, or treatment for DDD of the cervical spine or any cervical radiculopathy of any cause. The Veteran had served for less than six months of active duty and then had worked as a logger and textile worker for a full career following military service. Moreover, VA examinations shortly after service in February 1981 and March 1982 were normal with respect to motor examination and range of motion of the left upper extremity. A June 1996 VA examination stated that there was a negative MRI, thus the LUE pain was doubted to be of a cervical origin. Also, although the Veteran claimed LUE weakness since 1980, he had no atrophy or loss of muscular development on the left side as of June 1996 and his hands were equally calloused on both sides, indicative of heavy manual labor requiring bilateral strength. VA examination, December 2017. 

The opining physician further detailed that the March 2000 examination showed a full range of motion of both the cervical spine and left shoulder, although the Veteran had exhibited a very poor effort with the examination. The results of an EMG study in March 2004 was consistent with bilateral Grade 2 carpal tunnel syndrome. He then noted that carpal tunnel syndrome involves a compression of the ulnar nerve at the level of the wrist and would be unrelated to any cervical pathology in the neck. However, both conditions could cause similar symptoms such as tingling in the arms or weakness in the hands. The opining physician stated, “The EMG is the best test to determine the location and the severity of the disorder, and this test essentially ‘cleared the neck’ and implicated the wrist, which is a separate problem with a separate etiology than cervical spine disease of any type, including DDD of the cervical spine or cervical nerve root compression or cervical radiculopathy.” Id. 

The December 2017 opining physician also noted that an MRI of the cervical spine in May 2004 showed a normal examination, and found this to be “of extreme significance” because an MRI is very sensitive for both bony abnormalities as well as nerve compression and soft tissue abnormalities. Thus, as of 2004, the Veteran did not have significant degenerative arthritis of the spine in the neck, nor degenerative disc disease, nor any evidence of nerve compression. The examiner found that since this study was performed 24 years after the Veteran’s separation from service, and because the claimed disabilities of DDD and cervical radiculopathy are progressive and degenerative in nature and do not reverse, then the Veteran could not have had these disabilities during service, or in the intervening 24 years. This physician further stated that these conditions were not caused or proximately due to an in-service injury or trauma, because 24 years was more than enough time for these conditions to develop if they were due to military activity occurring between October 1979 and March 1980 during the Veteran’s less than six months of active service. Id. 

The opining physician notes instead that in March 2008 there was an orthopedic evaluation for his left shoulder and notes from this evaluation reflects that the May 2004 MRI had been ordered to entirely exclude any cervical nerve root compression at the level of the cervical spine as an etiology for his left shoulder pain. Furthermore, because this MRI in 2004 was normal, then no nerve compression at the neck could be responsible for the Veteran’s shoulder and LUE complaints. X-rays of the cervical spine were also normal in April 2008. 

However, between 2008 and 2009, the diagnostic imaging by MRI and the results of EMG testing reflects a change in the Veteran’s condition according to this medical provider. Specifically, the MRI showed C3-C4 left facet arthropathy that appears more prominent as compared with the prior MRI in May 2004. The orthopedists diagnosed shoulder impingement and capsulitis and identified that impingement syndrome is not related to the Veteran’s service-connected neuropathy. Based on these facts, the opining physician found that between 2008 and 2009 the Veteran was starting to develop some arthritis and bony spurring on the left side of his cervical spine and that this would not be related to the 1980 rucksack injury, but would most likely be a sign of aging and degenerative arthritis with onset as the Veteran was in his late 40s. Id. In all, the result is a well-supported medical rationale for the physician’s negative opinion that the Veteran’s diagnosed cervical spine disease and radiculopathy are not related to his military service under a direct theory of entitlement. Taken together with the competent, credible and probative April 2008 VA opinion regarding the absence of persistent problems related to the January 1980 injury

In total, the December 2017 opinion found that the Veteran has cervical spine disease, but this was relatively recently diagnosed decades after the completion of military service and is less likely than not related to that service. This examiner also opined, regarding a secondary theory of entitlement, that a left brachial plexus injury to the axillae or underarm area would not cause a cervical disc or neck problem, and states that like the Veteran’s diagnosed carpal tunnel syndrome, the brachial plexus injury and cervical DDD are unrelated and not causally linked. Thus, the only connection or similarity between these conditions is that the symptoms may overlap, mimic one another, or cause confusion in that each can cause arm weakness, numbness, or tingling. VA opinion, December 2017. 

The opining physician further clarified that it is not likely that the cervical disc disease was misdiagnosed or mischaracterized as a brachial plexus injury during service because the anatomical studies conducted many years after service failed to show any evidence of cervical disc disease or cervical nerve compression through 2007 at least. In all, if the Veteran had a cervical disc problem during service, this physician determined that it would not have reversed or resolved, resulting in entirely negative imaging during the period prior to 2008. 

While the Veteran and others have variously stated a belief that his cervical spine disorder and symptoms of radiculopathy, and potentially adhesive capsulitis, could be related to the in-service injury in January 1980, the Board reiterates that the preponderance of the evidence weighs against such finding for the reasons stated above. As such, the claims of service connection for left shoulder adhesive capsulitis and cervical spine DDD with radiculopathy under a direct theory of entitlement is not supported. 

The Board now turns to the secondary theory of entitlement wherein the Veteran contends that rather than being attributable to the initial January 1980 injury, the diagnosed DDD with radiculopathy and adhesive capsulitis were caused or aggravated by the Veteran’s service-connected left brachial plexus neuropathy. 

As discussed above, the Board finds that entitlement to service connection for left shoulder adhesive capsulitis as secondary to left brachial plexus neuropathy is not warranted as no left brachial plexus neuropathy, although previously granted service connection, is shown by competent medical evidence to exist and is opined to have resolved shortly after service discharge based upon normal diagnostic studies conducted between the Veteran’s service discharge and recent medical treatment obtained after the development of intervening disabilities of cervical DDD, cervical radiculopathy, carpal tunnel syndrome, and other conditions. 

In this regard the Board concludes that treatment records show the Veteran was not diagnosed with cervical spine disease or adhesive capsulitis until decades after his separation from service. While the Veteran is competent to report having experienced symptoms of left upper extremity weakness, pain, and tingling sensations since service, he is not competent to provide a diagnosis in this case or determine that these symptoms were manifestations of cervical disc disease or adhesive capsulitis as opposed to brachial plexus injury. The issue is medically complex, as it requires knowledge of the interaction between multiple musculoskeletal systems in the body and interpretation of complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

Further, the June 2008 addendum opinion, January 2017 and December 2017 opinions, taken together, establish that the Veteran’s DDD of the cervical spine with radiculopathy and adhesive capsulitis of the left shoulder are not at least as likely as not related to an in-service injury, event, or disease, including the service-connected left brachial plexus neuropathy. The rationale is that the brachial plexus injury was self-limiting and resolved shortly after its occurrence. It was shown by diagnostic imaging not to be related to any cervical spine pathology at the time, and no persistent problems related to the initial ruck sack injury were shown by objective evidence obtained shortly after the Veteran’s discharge. Additionally, the Veteran subsequently worked in heavy manual labor positions requiring bilateral strength, and his hands were equally calloused on both signs, indicative of little or no left sided disabling weakness. These examiner’s opinions are found to be most probative, because they are based on an accurate medical history and provide an explanation that contains clear conclusions and supporting data. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008).

A subsequent addendum note in February 2018 reiterates that there is no medical nexus established in this case to link the Veteran’s current findings regarding cervical disc disease with radiculopathy and left shoulder adhesive capsulitis to a self-limiting, reversible brachial plexus injury that occurred during service. Additionally, there is no objective evidence of any on-going residual from the January 1980 injury, and no proximate records of treatment for any chronic, ongoing disability related to the Veteran’s in-service injury between 1980 and 2000. Instead, the Veteran’s own description of working as a logger for 17 years, working in a textile mill, and working at a tire plant “lifting tires” for over a year contradicts the Veteran’s report of ongoing left upper extremity pain and significant weakness since service. This opining physician found it implausible that the Veteran had a chronic, on-going cervical spine, neck, and shoulder disability at the time of his separation from service, which is corroborated by the post-service diagnostic testing in MRIs and EMGs. The provider ultimately states, “The finding of pathology now, no matter how severe, does not prove pathology THEN nor does it prove a NEXUS or a CAUSE-and EFFECT relationship to the self-limiting resolving injury in service.” VA addendum opinion, February 2018 (capitalization in the original). 

In sum, the Board concludes that, while the Veteran has disability affecting the left upper extremity disability during the period of this appeal, the preponderance of the evidence is against finding that either the Veteran’s cervical DDD with radiculopathy or left shoulder adhesive capsulitis is proximately due to or the result of, or aggravated beyond its natural progression by, his service-connected left brachial plexus neuropathy. 38 U.S.C. §§ 1110, 1131; Allen v. Brown, 7 Vet. App. 439 (1995) (en banc); 38 C.F.R. § 3.310(a). As such, the criteria necessary to establish service connection for the cervical DDD and adhesive capsulitis conditions are not met where the evidence weighs against the claims under either a direct or secondary theory of entitlement and the claims must be denied. 

Increased Disability Rating

2. Entitlement to a TDIU rating is denied.

A total rating based on individual unemployability may be granted where a Veteran is “unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities.” 38 C.F.R. § 4.16; see also 38 C.F.R. §§ 3.340(a), 3.341(a) (2018). If, as here, there is only one service-connected disability, it must be rated at 60 percent or more. 38 C.F.R. § 4.16(a). In this case, the Veteran’s single service-connected disability of left brachial plexus neuropathy is rated as 30 percent disabling throughout the present appeal. Thus, the minimum percentage threshold for TDIU is not met. 

Nonetheless, even when these criteria under 38 C.F.R. § 4.16(a) are not met, entitlement to a TDIU on an extraschedular basis may be considered when the Veteran is, under his or her particular circumstances, unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b). In determining whether the Veteran is entitled to TDIU, neither his nonservice-connected disabilities nor his age may be considered. Van Hoose v. Brown, 4 Vet. App. 361 (1993); 38 C.F.R. § 3.341(a). 

VA has previously referred this case to the Director of the Compensation Service for extraschedular consideration. In August 2015, the Director found that the Veteran reported he was last full-time employed in 2006 to VA, but Social Security Administration records show that the Veteran reported to that agency that his last employment ended in 2008. The Veteran was subsequently found to be disabled under Social Security Disability determination rules and disability benefits were awarded as of September 2010 based upon a diagnosis of fracture of lower limb, with a secondary diagnosis of fractures of the upper limb. The Veteran’s disabling injury prohibiting him from work has not been determined to be the service-connected brachial plexus neuropathy. Moreover, recent objective testing has revealed no ongoing residuals of brachial plexus neuropathy. Rather, the Veteran’s nerve impairment affecting his left shoulder muscles are from cervical nerve problems and adhesive capsulitis of the left shoulder, but not from the in-service traction injury on the nerves in the brachial plexus. Thus, although the Veteran may be unable to work, including as due to left shoulder weakness and pain, these symptoms do not stem from the service-connected disability and are instead due to nonservice-connected disabilities. In all, the Director determined that the evidence does not show that the Veteran is unable to secure and follow a substantially gainful occupation due to service-connected disability alone, and on this basis entitlement to TDIU on an extra-schedular basis is not warranted. Director’s memo, August 2015. 

The Board finds that the weight of the evidence, including multiple medical opinions obtained in this case, does not show that the Veteran’s inability to work is due to brachial plexus neuropathy alone, and no objective evidence shows that this service-connected brachial plexus neuropathy is currently present. Instead, the left upper extremity conditions now diagnosed are found not to be related to the Veteran’s active military service for the reasons discussed at length above. Therefore, the criteria to establish TDIU on an extraschedular basis are not met, and the claim must be denied. 

 

 

K. J. ALIBRANDO

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board K. McDonald, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.